First Federal Savings and Loan Association of Puerto Rico, demandante y recurrente, *v.* Asociación de Condómines y Comité de Titulares del Condominio Caribbean Towers, a través de su Presidente, René V. Batista, demandados y recurridos.

*Número:* R-82-117  *Resuelto:* 20 de junio de 1983

428

*Nelson Biaggi García,* de *Ramírez, Segal & Latimer,* abogado de la parte recurrente; *Fernando E. Agraít,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

El Condominio Caribbean Towers se constituyó en régimen de propiedad horizontal el 1 de diciembre de 1966, a tenor de las disposiciones de la Ley Núm. 104 de 25 de junio de 1958 (31 L.P.R.A. sec. 1291 *et seq.*). "[C]onsta esencialmente de dos áreas: comerciales y vivienda. Identificadas siguiendo el método de descripción de la escritura, las áreas comerciales se componen de un sótano (nivel menos uno); un piso terrero consistente de un área comercial (nivel cero); un área de oficinas (nivel uno); un segundo piso denominado área de estacionamiento con entrada y salida en la parte posterior del edificio con acceso a la Calle McKinley a través de una rampa (nivel dos); y un área de oficinas en el nivel tres. Las áreas residenciales consisten de las restantes ocho plantas, las primeras seis compuestas por 180 apartamentos y las últimas dos por 30 apartamentos de

dos plantas cada uno (duplex)." *Arce v. Caribbean Home Const. Corp.*, 108 D.P.R. 225, 231–232 (1978) (escolios omitidos). En la escritura matriz se estableció el valor de cada propiedad y el porcentaje que representaría en los elementos comunes.

Al amparo de las enmiendas introducidas a dicho estatuto mediante la Ley Núm. 157 de 4 de junio de 1976, se celebró una reunión para modificar el Reglamento del Condominio y autorizar la imposición del pago de cuotas de mantenimiento en proporción a la intensidad del uso y el grado del efecto de una propiedad de un condómino sobre las áreas comunes. Art. 38b(e), 31 L.P.R.A. sec. 1293b(e). En esa reunión estuvo presente el Sr. Tony López, representante de la firma Caribbean Towers, Inc., quien para esa fecha poseía la totalidad del área destinada a uso comercial y estaban gravadas por préstamos hipotecarios concedidos por el banco First Federal Savings and Loan Association de Puerto Rico. López objetó el cambio del reglamento. Acudió al representante del Departamento de Asuntos del Consumidor, el cual sostuvo al Consejo de Titulares. La enmienda reglamentaria se consignó en la Escritura Pública Núm. 1, ante el notario Lic. A. Manuel Martín y fue inscrita en el Registro de la Propiedad.

Así las cosas, el 1 de febrero de 1980 el First Federal advino titular de casi todas las áreas comerciales del referido condominio mediante un procedimiento de ejecución de hipoteca incoado contra Caribbean Towers, Inc. El 17 de diciembre de 1981 el Consejo de Titulares celebró una reunión en donde se discutió y se aprobó el presupuesto de gastos operacionales para el año 1982. Al igual que antes, se decidió que el área comercial pagaría en proporción al uso y al impacto que dicha superficie produce sobre los bienes comunes. El representante del banco se opuso oportunamente. Adujo que el aumento era arbitrario y contrario a derecho.

Al no prevalecer su objeción, subsiguientemente incoó

directamente ante el Tribunal Superior, Sala de San Juan, la acción civil objeto de este recurso. Expuso su condición de titular y propietario, y que la Ley Núm. 157, *supra*, exige que se enmienden las escrituras y los reglamentos de los regímenes de horizontalidad ya existentes, para conformarlos con las disposiciones de la ley enmendada. Sostuvo que para que fuera vinculante la nueva definición de mayoría y el criterio para determinar la participación de los titulares en los elementos comunes, ello tenía que lograrse mediante el voto de dos terceras partes de los titulares que a su vez representen igual cantidad del valor de los elementos comunes. Señaló, aunque de modo no concluyente, que se incumplió con tales requisitos y por consiguiente la actuación del Consejo era nula y sin consecuencia jurídica válida. Además, cuestionó la constitucionalidad de las disposiciones legales pertinentes al litigio, fundado en que les privaba o limitaba su derecho de propiedad al aumentarle las cargas y gravámenes sin el debido proceso de ley.

El Consejo de Titulares solicitó la desestimación por falta de jurisdicción alegando ser un condominio dual —comercial y residencial— al cual le aplicaba el Art. 48 de la Ley de Propiedad Horizontal y la Sec. 13 de la Núm. 157 que, leídas en conjunto, reflejan que el foro de jurisdicción primaria o exclusiva era el Departamento de Asuntos del Consumidor (DACO). El tribunal accedió y dictó sentencia desestimatoria. Fundamentó tal decisión en que "a base de la aplicación de la doctrina sobre 'jurisdicción primaria' resolvemos que en casos como el presente, donde se impugna un acuerdo del Consejo de Titulares concerniente a la administración de un inmueble sujeto al régimen de propiedad horizontal donde hay por lo menos un apartamento destinado a vivienda, la impugnación se ventilará en primera instancia *exclusivamente* ante el Departamento de Asuntos del Consumidor".

A solicitud del Banco revisamos.

## II

En cuanto al trasfondo fáctico pertinente, por vía de paréntesis aclaramos que los escasos hechos expuestos al inicio de esta ponencia surgen de los alegatos de las partes ante nos. Ninguna los ha cuestionado. Asumimos su veracidad a los únicos fines de decidir el recurso. En la etapa procesal en que se adjudicó el caso ante la sala de instancia no se había desfilado prueba.

El párrafo 4 de la demanda reza:

> Que el referido régimen de propiedad horizontal al cual hemos hecho referencia en la alegación anterior, nunca ha sido enmendado mediante el otorgamiento de una escritura pública correspondiente, *y de haberlo sido, cosa que negamos,* lo fue contrario a derecho sin celebrar las reuniones que en derecho se exigen, *pero de haberlas celebrado, cosa que también negamos,* no se obtuvo el porcentaje de votos que la ley requiere. Es la posición del demandante, en adición y como *alternativa* a lo anterior, que aunque se haya celebrado conforme a derecho la reunión que exige la ley a los efectos de hacer las enmiendas a los reglamentos y a la escritura de la propiedad horizontal, respecto al porciento [*sic*] de participación asignado a los locales comerciales y por consiguiente la forma en que se medirá[n] los porcentajes por local en los elementos comunes, se violaron las disposiciones reglamentarias que exigía el reglamento original que está y estaba en vigor, al no citar a los acreedores hipotecarios que según dicho Reglamento inscrito tenían derecho a ser citados, escuchados y con derecho a ejercer su voto como le pareciere.

■ El Banco argumenta que debemos aceptar como veraces *todos* estos hechos en atención a la doctrina que propugna que ante una moción de desestimación se toman como ciertos. *Cervecería Corona, Inc.* v. *Tribunal Superior,* 99 D.P.R. 698 (1971); *Sierra, Sec. Trabajo* v. *Bird,* 78 D.P.R. 170 (1955); *Sacarello* v. *Junta de Retiro,* 75 D.P.R. 267 (1953); *Boulon* v. *Pérez,* 70 D.P.R. 988 (1950). Tal proposición no es posible. Olvida que la doctrina se aplica solamente en cuanto a hechos "bien alegados", concebidos y

expresados de manera clara y concluyente, que de su faz no den margen a dudas. No podemos reconocer ningún otro alcance fuera de ese contexto. 5 *Wright & Miller, Federal Practice and Procedure: Civil* Sec. 1370, pág. 702 (1969); *González* v. *Hawayek*, 71 D.P.R. 528 (1950).

La Regla 6.5(b) de Procedimiento Civil autoriza a una parte a exponer su reclamación o defensa en dos o más formas, alternativa o hipotética. Ciertamente, las alegaciones transcritas están concebidas de ese modo, pero observamos que están fraseadas de tal forma, y su contenido a tal punto hipotético, que resulta imposible al juzgador detectar específicamente, sin margen de error, qué hecho está definitiva y concretamente alegado.

## III

La interrogante de cuál es el foro con poder y autoridad para intervenir en la presente acción no puede responderse únicamente a base de la aplicación automática de la doctrina de jurisdicción primaria. "La verdadera jurisdicción primaria ocurre tan solo cuando existe jurisdicción concurrente entre el proceso administrativo y el sistema judicial." *Ferrer Rodríguez* v. *Figueroa*, 109 D.P.R. 398, 402 (1980). De esta manera, la ". . . doctrina opera para determinar qué organismo, si el judicial o el administrativo, debe hacer la determinación inicial del asunto y se aplica específicamente cuando la situación presenta cuestiones de hecho que requieren el ejercicio de la discreción administrativa . . .". *E.L.A.* v. *12,974.78 Metros Cuadrados*, 90 D.P.R. 506, 511 (1964). Es menester analizar esa cuestión.

Las Secs. 9 y 11 de la aludida Ley Núm. 157, disponen:

Sec. 9. *Decisiones judiciales; Impugnación de acuerdos y determinaciones del Consejo, término*

Los acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores, del titular que somete el inmueble al régimen que establece este Capítulo, durante el período de administración

que contempla la sec. 1293-1 de este título, del Presidente y del Secretario, *concernientes a la administración de inmuebles que no comprendan apartamientos destinados a vivienda, serán impugnables ante el Tribunal Superior* por cualquier titular que estimase que el acuerdo, determinación, omisión, o actuación en cuestión es gravemente perjudicial para él o para la comunidad de titulares o es contrario a la ley, a la escritura de constitución o al Reglamento a que hace referencia la sec. 1293 de este título.

La acción de impugnación de acuerdos y determinaciones, que el titular estimase gravemente perjudiciales para él o para la comunidad de titulares deberá ejercitarse dentro de los treinta (30) días siguientes a la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación. Si se tratare de una actuación u omisión perjudicial, el plazo para ejercitar la acción de impugnación será dentro de los treinta (30) días siguientes a la fecha en que el titular tenga conocimiento de tal actuación u omisión perjudicial.

Al ejercitar la acción de impugnación de acuerdos del Consejo de Titulares, el titular deberá acreditar que estuvo presente o representado en la reunión en que se tomó el acuerdo que impugna y que no votó a favor del mismo. Si estuvo ausente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada.

Luego de oír a las partes en controversia, el Tribunal decidirá lo que corresponda conforme a derecho, equidad y normas de [buena] convivencia. El acuerdo, la determinación, omisión o actuación serán provisionalmente válidos, salvo que el Tribunal determine lo contrario.

Sec. 11. *Radicación de acciones de impugnación.*

Las acciones de impugnación reconocidas en la sec. 1293f de este título[,] que surjan en relación con la administración de inmuebles que comprendan por lo menos un apartamiento destinado a vivienda *se radicarán en el Departamento de Asuntos del Consumidor.*

Las disposiciones de la sec. 1293f de este título relativas a los términos prescriptivos de las acciones de impugnación, extremos que debe acreditar o justificar el titular que ejercite

la acción, criterios conforme a los cuales el juzgador decidirá las controversias planteadas, y las relativas a la validez provisional de los acuerdos, determinaciones, omisiones o actuaciones impugnadas, serán aplicables al ejercicio de las acciones de impugnación que se radiquen en el Departamento de Asuntos del Consumidor. (Énfasis suplido.) 31 L.P.R.A. secs. 1293f y 1294.

█ El lenguaje terminante y mandatorio transcrito es claro. Establece dos foros *distintos* para instarse acciones impugnatorias. El criterio para determinar el apropiado se remite al carácter exclusivo comercial o mixto (residencial y comercial) del condominio. Cuando en un inmueble se destina un apartamiento para vivienda, el foro indicado para decantar su pericia —"se radicarán", expresa la ley— es primeramente DACO. Esa jurisdicción es exclusiva. A. Ferrer, *Necesidad de reformar la Ley de Propiedad Horizontal de Puerto Rico, ponencias y comunicaciones presentadas al III Congreso Internacional de Derecho Registral,* Buenos Aires, Argentina, Talleres Gráficos Mundial S.R.L., 1978, T. I, pág. 525. El historial y propósito legislativo así lo corrobora. Se llenó el vacío existente y "la ausencia de un foro administrativo ante el cual los titulares pu[dieran] plantear sus querellas . . .". Como parte de la política pública gubernamental dirigida a estimular el máximo aprovechamiento de terrenos, se intentó salvar esa limitación que, unida a otras, desalentaban la compra de apartamientos y estimulaban el éxodo de los ya titulares de bienes sujetos a régimen de horizontalidad. Véase la Exposición de Motivos de la Ley Núm. 157.

█ En la presente acción el inmueble contiene unidades mixtas (comerciales y viviendas). En consecuencia, correspondía a DACO entender en cualquier acción que impugne un *acuerdo* adoptado por el Consejo de Titulares. No obstante, el Banco nos argumenta que la jurisdicción de DACO sólo aplica a la etapa de administración provisional contemplada en la Sec. 6 de la Ley, 31 L.P.R.A. sec. 1293-1,

que cubre el proceso de administración inicial, desde que se somete el inmueble al régimen de propiedad horizontal, hasta que se traspasa al Consejo de Titulares. Carece de méritos el planteamiento. De su faz la ley es clara. Su texto e historial rechazan tal interpretación.

## IV

Aclarado que corresponde a DACO la jurisdicción exclusiva para entender en este tipo de acción, elucidemos si existe fundamento válido y de excepción para que el tribunal soslaye ese trámite. En esa tarea debemos examinar los planteamientos adicionales del Banco.

Primeramente, impugna el acuerdo del Consejo de Titulares a base de la disposición transitoria de la Ley Núm. 157, que disponía:

Esta ley entrará en vigor noventa (90) días después de su aprobación, y sus disposiciones regirán a todo inmueble sometido al régimen de Propiedad Horizontal, cualquiera que sea el momento en que fuera sometido a dicho régimen.

Las comunidades de titulares que ya han sido sometidas al régimen de Propiedad Horizontal tendrán un plazo de un año a partir de la vigencia de la presente ley para adaptar sus escrituras de constitución y Reglamento a lo dispuesto en esta ley en lo que estuviere en contradicción con sus preceptos. Transcurrido dicho término las disposiciones de las escrituras de constitución y de los reglamentos de tales inmuebles no podrán ser aplicados en contradicción con lo establecido en la presente ley, y cualquiera de los titulares podrá instar judicialmente la adaptación prevenida.

La enmienda al reglamento a los fines de determinar la definición de mayoría que regirá un inmueble ya sometido al régimen de Propiedad Horizontal requerirá el acuerdo de las dos terceras partes de los titulares que a su vez representen las dos terceras partes del valor en los elementos comunes del inmueble.

La enmienda que la Sección 1 de esta ley practica al Artículo 8 de la Ley 104 de 25 de junio de 1958, según enmendada [Sec. 1291f de este título], a los fines de establecer el

criterio de superficie de los apartamientos para la determinación de los porcentajes de participación en los elementos comunes sólo será vinculante para aquellos inmuebles ya sometidos al régimen si así lo deciden las dos terceras partes de los titulares que a su vez representen las dos terceras partes del valor en los elementos comunes. Sec. 13.

El Banco sostiene que ". . . del segundo párrafo de la anterior cita, el legislador fue enfático en el sentido [de] que si el Consejo de Titulares y la Asociación de Condómines no actuaba[n] para conformar la escritura de propiedad horizontal y su reglamento en casos de los regímenes ya vigentes, entonces es potestativo de los titulares[,] individualmente[,] el obligar a que ese Consejo de Titulares y la Asociación de Condómines cumpla con lo postulado en la ley mediante una acción judicial obligándolos a tales efectos. Eso es precisamente uno de nuestros planteamientos, ya que alegamos que la reunión que se exige por virtud de esta sección 13 para conformar la escritura y el reglamento con la nueva ley y para poder vincular, como se expresa en los párrafos siguientes de la anterior cita, a los titulares con la nueva definición de mayoría de titulares y con el nuevo criterio para determinar la participación en los elementos comunes, se hace imprescindible que se celebre una reunión donde voten dos terceras partes de los titulares que a su vez representen las dos terceras partes del valor en los elementos comunes del inmueble. De no hacerse la referida votación entonces los regímenes ya existentes no quedarán obligados bajo estas nuevas fórmulas y por lo tanto seguirán sujeto a las viejas fórmulas establecidas en las escrituras mediante la cual dichas propiedades se sometieron al régimen".

Coincidimos en que la sección citada requiere determinada votación y provee una acción judicial para que cualesquiera titulares soliciten la "adaptación" de las escrituras y reglamentos de regímenes de propiedad horizontal que sean *contradictorios* a los preceptos de la Ley Núm. 157, *supra.* Sin embargo, según hemos indicado, en la

etapa procesal de la desestimación decretada, el récord estaba completamente huérfano en cuanto a qué trámites siguió el Consejo de Titulares y cuál fue el contenido de la enmienda al Reglamento. Desconocemos si era necesario modificar la escritura de constitución, exigencia que solamente es menester si tal escritura es *contraria* a la ley. De la manera más favorable hacia el Banco, la única alegación clara era la que cuestionaba el acuerdo del Consejo de Titulares como contrario a la ley e irrazonable. A base de la misma, DACO es el foro apropiado.

No podemos descansar en las restantes alegaciones imprecisas e inconclusas de la demanda. Es necesario depurar una serie de hechos. "[S]iempre que sea procedente, los tribunales tienen derecho a saber cuál ha sido la interpretación administrativa antes de resolver las controversias y por el contrario, no las resuelven a base de interpretaciones especulativas o hipotéticas de los litigantes . . . ." *E.L.A.* v. *12,974.78 Metros Cuadrados,* supra, pág. 513; *Vélez Ramírez* v. *Romero Barceló,* 112 D.P.R. 716 (1982). Ese enfoque reduce considerablemente el margen de error. Los tribunales rehusamos resolver en el abstracto o en convertirnos en adivinantes de lo oculto o ignorado.

Íntimamente relacionado, el Banco recurrente recalca que de determinarse que corresponde a DACO intervenir, debemos eximirlo en virtud de su planteamiento constitucional, cuestión cuyo ámbito compete a los tribunales y no a los organismos administrativos.

Este argumento ha sido considerado por la doctrina en dos distintas vertientes. Los casos que envuelven posibles lesiones a los derechos civiles y aquellos en que se ataca la constitucionalidad de la ley orgánica de la agencia administrativa y, por consiguiente, de sus actuaciones. K. Davis, *Administrative Law Treatise,* Secs. 20.12 y 20.14 (Supl. 1982).

■ En nuestra jurisdicción, la primera instancia —reclamación por lesiones a los derechos civiles bajo la Ley

Núm. 12 de 8 de agosto de 1974 (32 L.P.R.A. sec. 3524)— ha sido evaluada a la luz de si la acción envuelve o no un agravio de patente intensidad al derecho del individuo que reclame urgente reparación. *Pierson Muller I* v. *Feijoó,* 106 D.P.R. 838, 850–851 (1978); *Santiago* v. *Superintendente de la Policía,* 112 D.P.R. 205 (1982). En esa misión el tribunal debe exigir un irrecusable grado de autenticidad y claridad en el planteamiento constitucional al amparo de la Ley de Derechos Civiles. No es acreedor a una vista en los méritos quien de su faz no aduce hechos terminantes y precisos, justificativos de la opción judicial por el remedio constitucional y de la preterición del cauce administrativo.[1]

En cuanto a la segunda situación —casos en que se ataca la constitucionalidad de la ley orgánica de la agencia— hemos pautado que "la impugnación constitucional de actuaciones administrativas está sujeta a la norma del agotamiento de los remedios administrativos. . . . Aunque las agencias administrativas no pueden dilucidar la constitucionalidad de la ley que las crea, sí pueden determinar si su aplicación a los hechos específicos de un caso sería inconstitucional". *Vélez Ramírez* v. *Romero Barceló,* supra, pág. 728.

Este recurso no es susceptible de ubicarse dentro de una de esas situaciones. No estamos frente a un recurso de interdicto a base de la Ley Núm. 12, *supra,* presentado para la protección de algún derecho constitucional posiblemente afectado por la actuación de algún funcionario público, ni ante una impugnación de la ley orgánica de la agencia. El mero hecho de invocar una cuestión constitucional no margina automáticamente el proceso administrativo. Aunque es a los tribunales a quienes compete toda interpretación constitucional, ello no implica que una simple alegación al efecto

---

[1] Para casos en que no se ha satisfecho el criterio, *cf. Otero Martínez* v. *Gobernador,* 106 D.P.R. 552 (1977); *Febres* v. *Feijoó,* 106 D.P.R. 676 (1978); *Pedraza Rivera* v. *Collazo Collazo,* 108 D.P.R. 272 (1979).

excluya el foro administrativo. Es preciso, además, que se demuestre que la acción administrativa constituye una gestión inútil, inefectiva y que no ofrece un remedio adecuado o que ha de causar un daño irreparable e inminente. Véase, *Vda. de Iturregui* v. *E.L.A.*, 99 D.P.R. 488 (1970), revocado en otros aspectos por *Flamboyán Gardens* v. *Junta de Planificación*, 103 D.P.R. 884 (1975).

En el caso de autos, el evento que da origen a la demanda es precisamente el desacuerdo e inconformidad del Banco recurrente con las cuotas que le impuso el Consejo de Titulares. Su reclamo constitucional se nutre del curioso argumento de que aun sin ser titular —por ser acreedor hipotecario— tenía derecho a ser citado, participar y votar en la reunión en que se modificó el reglamento y autorizó la imposición de cuota de mantenimiento en proporción a la intensidad del uso y el grado del efecto de una propiedad de un condómino sobre las áreas comunes.

Hemos visto cómo para este tipo de controversia —en casos de condominios residenciales— la Asamblea Legislativa dispuso expresamente que DACO sería el foro llamado a intervenir. Por otra parte, es obvio que la posibilidad de daño irreparable e inminente sólo descansa en la supuesta imposición de unas cuotas que considera irrazonables. El valor envuelto es estrictamente pecuniario. Esa sería la verdadera urgencia, si alguna. El alegado daño es temporal y no proyecta la intensidad requerida. En el supuesto de que finalmente en su día el Banco prevaleciera, nada impide que cualquier exceso pagado de la cuota que realmente venga obligado a satisfacer le sea acreditado en su oportunidad. El remedio puede ser satisfecho por DACO.

*Se dictará sentencia confirmatoria.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión.