# 2006 DTA 101

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL I**

FAST STEEL CORPORATION
Demandante-Recurrida

v.

NELAN CONTRACTORS; TEN GENERAL CONTRACTORS, S.E.;
XUAPA II, INC. Y FULANO DE TAL
Demandados

AMERICAN INTERNATIONAL INSURANCE COMPANY OF P.R.
Co-demandada-Peticionaria

Núm. KLCE-2006-00014

San Juan, Puerto Rico, a 14 de julio de 2006

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
el Juez López Feliciano y la Juez García García

López Feliciano, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Comparece ante este foro American International Insurance Company of P.R., en adelante la AIICo, solicitando que se revoque una resolución emitida el 28 de noviembre de 2005, notificada el 6 de diciembre siguiente, por la Sala Superior de San Juan del Tribunal de Primera Instancia (T.P.I.). Mediante dicha resolución, el foro primario se pronunció no ha lugar en cuanto a una solicitud de desestimación de una demanda de coparte presentada por Xuapa II, Inc. contra AIICo.

Con el beneficio de la comparecencia de las partes, estamos en posición de disponer del recurso, lo que a continuación hacemos.

I

**Los Hechos e Incidentes Procesales Pertinentes**

## A
### Alegaciones Originales e Iniciales

El 15 de enero de 2003, la recurrida Fast Steel Corporation, en adelante Fast Steel, presentó una demanda en cobro de dinero en contra de Nelan Contractors, Ten General Contractors, Xuapa II, Inc. y AIICo. En la misma reclamó que Nelan Contractors, en adelante Nelan, le adeudaba $54,495.75 por concepto de materiales suplidos y no pagados, utilizados en el proyecto *"La Loma de Fajardo"* que ubica en la Carretera 194, Km. 10.0, en el Barrio Quebrada en Fajardo, Puerto Rico.

Acumuló como partes demandadas a Ten General Contractors, en adelante Ten General, por ser el contratista principal del referido proyecto y porque según Nelan es el causante de su incapacidad para poder pagar a la demandante Fast Steel; a AIICo porque emitió la fianza (*"Payment Bond"*) número 160-26837 a favor de la codemandada Ten General; a Xuapa II, Inc., en adelante Xuapa, por ser la dueña del proyecto, y también, a base de la responsabilidad establecida en el Artículo 1489 del Código Civil de Puerto Rico, 31 L.P. R.A. sec. 4130. ■ Nelan contestó la demanda negando las alegaciones presentadas en su contra.

Por su parte, AIICo contestó la demanda y levantó entre sus defensas afirmativas que su responsabilidad era limitada de acuerdo con los términos y condiciones de la fianza expedida, dentro de las cuales se encuentran condiciones precedentes que deben cumplirse por parte de los reclamantes para poder reclamar bajo el contrato de fianza. Indicó entre esas condiciones, limitaciones o condiciones de tiempo, el establecimiento de un período de caducidad para la notificación y radicación de reclamaciones, con las que Nelan no había cumplido.

Alegó, además, que su obligación era accesoria a la de Ten General, por lo que hizo formar parte de sus defensas afirmativas las esbozadas por Ten General en su contestación a la demanda.

De igual modo, Ten General contestó la demanda. Incluyó como parte de sus defensas afirmativas que ante la discrepancia del monto reclamado y el derecho invocado en la demanda, según redactada, ésta no aducía hechos constitutivos de una causa de acción para la concesión de un remedio. Señaló además, que Fast Steel no acumuló ciertas partes indispensables en el caso; que desconocía de las alegadas deudas de Nelan; que la totalidad o parte de la reclamación corresponde a materiales suplidos a otros proyectos que tenía Nelan con terceros desconocidos; y que la reclamación podría adolecer de caducidad o prescripción en derecho.

Xuapa contestó la demanda negando las alegaciones presentadas en su contra. Levantó como defensas afirmativas que la demanda no exponía hechos que justificaran la concesión de un remedio; que la suma reclamada en la misma era exagerada o especulativa; que al momento de la reclamación, la deuda no era líquida y exigible a favor de Ten General y en contra de Xuapa; y que la suma reclamada debía ser satisfecha por Nelan, Ten General y la AIICo.

## B
### Alegaciones Entre Copartes Atinentes al Recurso

Xuapa presentó demanda de coparte en contra de AIICo y Ten General para que éstas le reembolsaran cualquier suma que tuviera que pagar a Fast Steel o a Nelan por dictamen judicial.

AIICo contestó la demanda de coparte de Xuapa. Levantó como defensas afirmativas que la demanda dejaba de exponer una reclamación que justificara la concesión de un remedio; que sólo era responsable de acuerdo con los términos y condiciones de la fianza expedida; que su obligación era accesoria a la de Ten General; y que la reclamación presentada era prematura.

Es con relación a esta demanda contra coparte y la contestación a la misma que gira la controversia objeto

del presente recurso.

## C
### Otros Trámites Procesales en Instancia

El 28 de julio de 2004, el T.P.I. emitió una sentencia parcial en la que, en virtud de una solicitud de desistimiento presentada por Fast Steel, se ordenó el archivo de la demanda en cuanto a Ten General y la AIICo. Esta sentencia fue notificada el 13 de agosto de 2004.

Transcurridos varios trámites procesales, Fast Steel presentó demanda enmendada en la que incluyó nuevamente como codemandados a Ten General y AIICo. AIICo contestó la demanda negando las alegaciones y levantó las mismas defensas afirmativas que había presentado contra la demanda original.

AIICo presentó una solicitud de desestimación en la que alegó que la demanda de coparte presentada por Xuapa en su contra debía ser desestimada. Indicó que en virtud de las disposiciones del ordenamiento legal vigente y del texto del contrato de fianza, ▇ Xuapa carecía de legitimación para presentar una reclamación en su contra.

Xuapa presentó una moción de réplica a la moción de desestimación de la AIICo. ▇ En la misma argumentó que en virtud del primer párrafo del contrato de fianza, AIICo se obligó para con el dueño de la obra conjuntamente con el contratista de manera mancomunada y solidaria a pagar por los materiales suplidos para la obra.

El 28 de noviembre de 2005, notificada el 6 de diciembre siguiente, el T.P.I. se pronunció no ha lugar en cuanto a la moción de desestimación presentada por la AIICo. Fundamentó la misma en los argumentos esbozados en la réplica presentada por Xuapa.

Inconforme con dicha determinación, la AIICo comparece ante este foro apelativo.

## II
### La Cuestión Planteada

AIICo señala que el T.P.I. cometió un único error, a saber:

*"Erró el T.P.I. al declarar no ha lugar la moción de AIICo solicitando la desestimación de la demanda de coparte de Xuapa II, Inc, y adoptar por referencia el erróneo argumento de Xuapa, al efecto de que, como dueña de la obra, tiene derecho a reclamar de la fiadora bajo la fianza de pago ("Payment Bond")."*

## III
### El Derecho Aplicable

## A
### El Artículo 1489 del Código Civil de Puerto Rico

La norma en los contratos de obra, según se conoce, es que los que suplen materiales y trabajo gozan de una acción contra el dueño de la obra por la cantidad que éste pudiera adeudar al contratista. Artículo 1489 del Código Civil, *supra; D'All Concrete Mix v. R. Fortuño, Inc.,* 114 D.P.R. 740, 742-743 (1983); *R. Román & Cía. V. J. Negrón Crespo, Inc.,* 109 D.P.R. 26, 29-33 (1979); *Empresas Capote, Inc. v. Tribunal Superior,* 103 D.P.R. 765, 770-771 (1975).

El suplidor adquiere en estos casos los derechos que tiene el contratista ante el dueño, lo que significa que la cantidad que pueda ser adeudada está sujeta necesariamente a liquidación por razón de reajustes o posibles reclamaciones recíprocas que puedan existir entre el contratista y el dueño. *Armstrong, Etc. v. Inter-Amer. Builders, Inc.*, 98 D.P.R. 734, 741 (1970). Véase, además, *Montalvo & Comas Electric Corp. v. E.L.A.*, 107 D. P.R. 558, 563-564 (1978).

El Artículo 1489 del Código Civil, 31 L.P.R.A. sec. 4130, específicamente establece que los que realizan un trabajo u ofrecen materiales en una obra ajustada alzadamente por el contratista tienen una acción contra el dueño de la obra, hasta la cantidad que éste adeude al contratista cuando se hace la reclamación. El Tribunal Supremo ha resuelto que en tales situaciones, el dueño de la obra se convierte en deudor de los materialistas u obreros desde el mismo instante en que se hace la reclamación a éste, ya sea mediante reclamación extrajudicial o mediante la presentación de una demanda en cobro de dinero. *Goss, Inc. v. Dycrex Const. & Co., S.E.*, 141 D. P.R. 342, (1996); *Armstrong, Etc. v. Inter-Amer. Builders, Inc., supra; Amer. Surety Co. v. Tribunal Superior*, 97 D.P.R. 452, 454-456 (1969). Se trata de una excepción al principio de que los contratos solamente tienen efecto entre los otorgantes y sus causahabientes. *Goss, Inc. v. Dycrex Const. & Co., S.E., supra; R. Román & Cía v. J. Negrón Crespo, Inc., supra*, pág. 30.

Ahora bien, el Artículo 1489, *supra*, expone tan sólo un principio general de derecho, el cual puede modificarse por la voluntad de las partes, según consignada en el contrato correspondiente. *D'All Concrete Mix v. R. Fortuño, Inc.*, 114 D.P.R. 740, 742 (1983).

El derecho y la acción que da esta sección a favor de un tercero que haya puesto trabajo o materiales en una obra en construcción se funda en motivos de equidad: evitar que un dueño o empresario, o ambos, que contratan una obra ajustada alzadamente se enriquezcan injustamente con el esfuerzo o la aportación impagada de obreros y materialistas. *C. Armstrong e Hijos v. Díaz, supra.*

### B
### El Contrato de Fianza en el Código Civil de Puerto Rico

El Código Civil de Puerto Rico en su Artículo 1721 define el contrato de fianza de la siguiente manera: *"Por la fianza se obliga uno a pagar o cumplir por un tercero, en el caso de no hacerlo éste"*. 31 L.P.R.A. sec. 4871. *Sucn. María Resto Núñez v. Ortiz Lebrón*, 157 D.P.R. ___ (2002), **2002 J.T.S. 118**.

El contrato de fianza tiene tres características determinantes, a saber: (1) la obligación contraída por la fianza es accesoria y subsidiaria; (2) es unilateral porque puede establecerse sin la intervención del deudor, y aun del acreedor en cuyo favor se constituye; y (3) el fiador es persona distinta del fiado, ya que nadie puede ser fiador personalmente de sí mismo. *Sucn. María Resto Núñez v. Ortiz Lebrón, supra.*

El Código Civil de Puerto Rico, en su Artículo 1725, 31 L.P.R.A. sec. 4875, establece lo siguiente: *"El fiador puede obligarse a menos, pero no a más que el deudor principal, tanto en la cantidad como en lo oneroso de las condiciones. Si se hubiera obligado a más, se reducirá su obligación a los límites de la del deudor."* Esto es así, ya que, como dijimos anteriormente, el contrato de fianza es uno accesorio, aunque separado y distinto, al contrato que establece la relación obligatoria principal o garantizada. Así, el fiador puede obligarse según términos particulares que lo harían potencialmente responsable en menor medida que al fiado en su obligación contractual. *Luán Invest. Corp. v. Rexach Const. Co.*, 152 D.P.R. 652, 661 (2000).

El Tribunal Supremo de Puerto Rico ha reiterado en varias ocasiones la norma de que el contrato de fianza debe ser interpretado liberalmente. *Caguas Plumbing v. Continental Cons. Corp.*, 155 D.P.R. 744, 754 (2001); *Luán Invest. Corp. v. Rexach Const. Co., supra; Olazábal v. U.S. Fidelity, Etc.*, 103 D.P.R. 448 (1975); *A. L. Arsuaga, Inc. v. La Hood Const., Inc.*, 90 D.P.R. 104 (1964); *Cristy & Sánchez v. E.L.A.*, 84 D.P.R. 234 (1961).

A esos efectos, se ha señalado que desde que el oficio del fiador se convirtió en una industria lucrativa, ya no rige la doctrina de interpretación restrictiva de las fianzas de construcción y que en su lugar se ha adoptado como norma la interpretación liberal de las mismas. *Olazábal v. U.S. Fidelity, etc., supra,* pág. 454.

Nuestro Código Civil ordena que los contratos se interpreten de forma que prevalezca la verdadera intención que tuvieran las partes al contratar. Artículo 1233 del Código Civil, 31 L.P.R.A. sec. 3471.

En ese sentido, nuestro más Alto Foro ha señalado que *"las partes, al contratar, lo hacen con el propósito de que sus pactos y convenciones tengan efectividad y no para que resulten declaraciones baldías e ilusorias."* *Morales Garay v. Roldán Coss,* 110 D.P.R. 701, 707 (1981).

## C
### El Contrato de Fianza en el Presente Caso

En este caso, el contrato de fianza fue otorgado entre el contratista Ten General y AIICo. Se especifica en el mismo que el dueño del proyecto *"La Loma de Fajardo"* sobre el cual se otorga la fianza es Xuapa II, Inc.

En la primera cláusula del contrato, se establece lo siguiente:

*"1. The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.*

*2. With respect to the Owner, this obligation shall be null and void if the Contractor:*

*2.1 Promptly makes payment, directly or indirectly, for all sums due Claimants, and*

*2.2 Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit's for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner default.*

*...".*

Surgiendo de esta cláusula ciertas estipulaciones a favor de terceros que no son parte en el contrato de fianza, es importante reconocer que el Tribunal Supremo ha sostenido que en un contrato de fianza lo estipulado a favor de terceros es lo que rige las responsabilidades del fiador. *D'All Concrete Mix v. R. Fortuño, Inc., supra,* pág. 942.

En la cláusula 15.1 se define expresamente a quién se considerará reclamante (*"claimant"*):

*"15.1 Claimant: An individual or entity having a direct contract with the contractor or with a subcontractor of the Contract to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this bond shall be include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contract and the Contract's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where labor, materials or equipment were furnished."*

También se ha determinado que las palabras *"jointly and severally"* son el equivalente a *"mancomunada y solidariamente"*. A esos efectos, en *National City Bank v. De la Torre*, 48 D.P.R. 134 (1935), se expresó: *"[n]o tenemos duda alguna y siempre lo habíamos creído así, que las palabras 'jointly and severally' son equivalentes a 'mancomunada y solidariamente', usadas en derecho civil"*.

El propósito de la fianza en la industria de la construcción es generalmente proteger al dueño en caso de que, al incumplir el contratista, se viere obligado a satisfacer el importe adeudado por materiales adquiridos para la obra y salarios devengados. Sólo así se asegura que su propiedad estará libre de gravámenes, y por eso, para prevenir un perjuicio económico o una pérdida, se protege mediante la exigencia al contratista de una fianza. *Ferrer v. Alliance Company of P.R., supra.*

En Puerto Rico, por la interacción del Art. 10 de la Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 279 (Supl. 1964, pág. 203), y la Sec. 1 de la Ley Núm. 73 de 4 de mayo de 1931, 29 L.P.R.A. sec. 186, se establece un gravamen para beneficio de los obreros en la industria de la construcción. No existe igual protección para beneficio de los materialistas, y, por ende, ningún riesgo corre el dueño de la obra si a éstos no se les satisface el importe de los suplidos, a no ser la limitada responsabilidad que emana del Artículo 1489, *supra.*

**D**
## La Estipulación Contractual a Favor de Terceros

En nuestro ordenamiento civil, como regla general, los contratos sólo afectan a las partes involucradas en ellos. Artículo 1209 del Código Civil, *supra*. No obstante, es norma de derecho reconocida que un contrato no siempre es indiferente para los terceros. *Bco. Central Corp. v. Yauco Homes, Inc.*, 135 D.P.R. 858, 863 (1994).

El Artículo 1209, *supra*, dispone que los contratos pueden tener estipulaciones a favor de un tercero y que el tercero puede exigir su cumplimiento siempre que hubiese hecho saber su aceptación al obligado antes de que la estipulación haya sido revocada. *Bco. Central Corp. v. Yauco Homes Inc., supra; A.L. Arsuaga, Inc. v. la La Hood Construction*, 90 D.P.R. 104, 109-110.

Nuestro Tribunal Supremo ha sostenido que en el contrato a favor de terceros la intención de los contratantes es conceder al beneficiario el derecho a reclamar judicialmente el cumplimiento de lo establecido. *Bco. Central Corp. v. Yauco Homes Inc., supra*, pág. 864.

Citando con autoridad a Diez-Picazo, el más Alto Foro ha puntualizado que los contratos a favor de terceros *"son únicamente aquéllos que las partes celebran para atribuir de manera directa o indirecta un derecho a un tercero, que, sin embargo, no ha tenido participación ni directa ni indirecta en la celebración del negocio y que no queda por consiguiente obligado ni vinculado por él..."*, y que *"...la razón de ser de la estipulación a favor o en beneficio del tercero radica en la existencia de un interés del estipulante en que el pacto sea establecido y en que la promesa sea cumplida para el beneficiario"*. █

Es debido a la naturaleza del interés del estipulante que el tercero también está legitimado para exigir al promitente el cumplimiento de la prestación convenida a su favor; y no es necesario que el tercero acepte para que adquiera el derecho estipulado a su favor. Como regla general, es el estipulante quien tiene la única facultad para revocar la disposición en beneficio del tercero. *Bco. Central Corp. v. Yauco Homes Inc., supra*, págs. 864-865.

Finalmente sobre este tema, el Tribunal Supremo ha dejado claro que la determinación de si la estipulación da al tercero derecho a reclamar la ejecución de lo prometido es una cuestión de hecho. *Bco. Central Corp. v. Yauco Homes Inc., supra*, pág. 866.

# E
## La Demanda Contra Coparte

En nuestro ordenamiento procesal civil, la alegación conocida como *"demanda de coparte"* o *"demanda contra coparte"*, incorporada de la Regla 11.7 de las de Procedimiento Civil, 32 Ap. III, R. 11.7, es la que formula una parte contra otra que ya se encuentra incluida en el pleito en la misma condición de quien formula la demanda contra coparte. Hernández Colón R., *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, Michie de Puerto Rico, Ed. 1997, pág. 191.

La Regla 11.7, *ante*, establece que la demanda contra coparte puede contener cualquier reclamación que surja del acto, omisión o evento que motive la demanda original. Se trata de una reclamación que podría ser contingente, ya que la Regla dispone que la demanda contra coparte puede contener una reclamación al efecto de que la parte contra la que se dirige es o **puede ser** responsable al demandante contra coparte de la totalidad o parte de aquella reclamación que contra él se haya hecho en el pleito.

La Regla exige que la demanda contra coparte se limite a eventos o cuestiones litigiosas vinculadas o relacionadas con el pleito principal. Hernández Colón, *ob. cit., Id.*

# F
## Los Fundamentos para la Desestimación de una Demanda

La Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 10.2, sobre la forma de cómo presentar defensa contra la demanda, permite interponer la defensa de que la demanda no expone una reclamación que justifique la concesión de un remedio.

Reiteradamente, nuestro Tribunal Supremo ha enunciado que, a los fines de resolver una moción de desestimación de una demanda, tienen que presumirse como ciertos los hechos bien alegados en la misma. Esto significa que el tribunal ante quien se presenta dicha moción debe dar por ciertas y buenas las alegaciones hechas en la demanda presentada. *García Gómez et. Al. v. E.L.A. et. al.*, 163 D.P.R. ___ (2005), **2005 J.T.S. 18**; *Roldán Rosario v. Lutron S.M. Inc.*, 151 D.P.R. 883 (2000); *Unisys v. Ramallo Brothers,* 128 D.P.R. 842, 858 (1991); *Granados Navedo v. Rodríguez Estrada I,* 124 D.P.R. 1 (1989); *Ramos v. Marrero,* 116 D.P.R. 357, 369 (1988); *First Federal Savs. v. Asociación de Condómines*, 114 D.P.R. 426 (1983).

La norma anterior se traduce en que a los efectos de considerar la moción para desestimar la demanda, no se ponen en duda los hechos aseverados en la misma; claro está, se aplica este principio solamente a los hechos bien alegados y expresados de manera clara y concluyente, que no den margen a dudas. *Unisys v. Ramallo Brothers, supra; First Federal Savs. v. Asociación de Condómines, supra*, págs. 431-432.

En conclusión, frente a la solicitud de desestimación, las alegaciones de la demanda se examinarán liberalmente y de la manera más favorable para el demandante. Únicamente se desestimará la acción si la parte promovente de la acción no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar en juicio. *García Gómez v. E.L.A., supra; Unisys v. Ramallo Brothers, supra; Granados Navedo v. Rodríguez Estrada I, supra; Hardinguey Ferrer v. U.I.,* 148 D.P.R. 13 (1999); *González Camacho v. Santos Cruz,* 124 D.P.R. 396 (1989); *Candal v. CT Radiology Office,* 112 D.P.R. 227 (1982).

# IV
## Análisis de la Cuestión Planteada

En su escrito ante nos AIICo sostiene que las fianzas de pago que se utilizan en la industria de la construcción son contratos para afianzar las obligaciones del contratista y sus subcontratistas para con los

terceros suplidores del proyecto, por concepto de labor, materiales y equipos; y que no se afianzan obligaciones del dueño ni del contratista. Sostiene, también, que la forma de la fianza expedida en este caso es la más utilizada en la industria de la construcción, forma A-132 del American Institute of Architects (AIA). En la misma, la potestad de reclamar de la fiadora se limita expresamente a los terceros suplidores.

Arguye AIICo que la fianza expedida establece clara y específicamente que quienes pueden reclamar de la fiadora son los terceros suplidores, que reúnan las condiciones establecidas en la definición de *"claimant"* que establece la propia fianza, ver *ante*; y que el dueño de la obra, Xuapa, no reúne dichas condiciones.

Señala, además, que el hecho de que se haya expedido una fianza para asegurar el pago de deudas a los suplidores de la obra, no releva al dueño del proyecto de la responsabilidad primaria para con los materialistas y obreros de la obra al amparo del Artículo 1489, *supra*.

Xuapa, en su escrito en oposición, presenta varios argumentos. Sostiene: (1) que la moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, que presentada por AIICo, en realidad es una solicitud de sentencia sumaria; (2) que la fianza establece claramente, en su cláusula número 1, que AIICo se obligó mancomunada y solidariamente con Ten General y a favor de Xuapa, a pagar los materiales suplidos para la obra; y (3) que existe una controversia que no permite desestimación, ya que la cláusula número 15 del contrato de fianza, que define lo que es un *"claimant,"* está en conflicto con lo dispuesto en la cláusula número 1; por lo que actuó correctamente el T.P.I. al negarse a desestimar. Solicita que AIICo cumpla con lo establecido en el contrato de fianza, y reclama que el mismo se interprete liberalmente.

Para fundamentar su argumento, de que AIICo se obligó a favor de Xuapa en la cláusula número 1 del contrato de fianza, Xuapa invoca la aplicación al caso de autos del Artículo 1209 del Código Civil, 31 L.P.R.A. sec. 3374, que reconoce que los contratos pueden tener estipulaciones a favor de terceros.

Enmarcados los planteamientos de las partes dentro del derecho anteriormente expuesto, resolvemos.

No hay controversia en cuanto a que Fast Steel, como suplidora de ciertos materiales que se utilizaron en el proyecto de Xuapa, a la luz del derecho que le concede el Artículo 1489 del Código Civil, *supra*, no tan sólo tiene causa de acción contra el subcontratista (Nelan) que por encomienda del contratista principal (Ten General) ordenó dichos materiales, sino también contra el propio contratista y contra Xuapa, quien a fin de cuentas se benefició del uso de los mismos en su obra.

Los que proveen los materiales para una obra cuyo precio ha sido ajustado alzadamente por el contratista, también tienen una causa de acción contra el dueño de la obra, pero limitada hasta la cantidad que el dueño adeude al contratista cuando se hace la reclamación. De esta manera, el dueño de la obra se convierte en deudor del suplidor de materiales al que el contratista o un subcontratista de éste no le han pagado por los mismos. Véase *D'All Concrete Mix v. R. Fortuño, Inc., supra; R. Román & Cía. v. J. Negrón Crespo, Inc., supra; Empresas Capote, Inc. v. Tribunal Superior, supra; Goss, Inc. v. Dycrex Const. & Co., S.E., supra; Armstrong, Etc. v. Inter-Amer. Builders, Inc., supra; Amer. Surety Co. v. Tribunal Superior, supra*.

AIICo nos plantea que Xuapa, como dueña de la obra, no tiene derecho a reclamarle bajo los términos del contrato de fianza convenido con el contratista principal Ten General, quien en su vez subcontrató a Nelan, la que adquirió los materiales de Fast Steel y no pagó por ellos.

Sostenemos que no le asiste la razón a AIICo. Al así concluirlo, hemos tenido presente que es norma reiterada que el contrato de fianza debe ser interpretado liberalmente. Véase *Olazábal v. U.S. Fidelity, Etc., supra; A. L. Arsuaga, Inc. v. La Hood Const., Inc., supra; Cristy & Sánchez v. E.L.A., supra*. Además, que las partes que entran en un contrato lo hacen con el propósito de que sus pactos tengan efectividad y no para que se

conviertan en declaraciones *"baldías e ilusorias"*. Véase *Morales Garay v. Roldán Coss, supra.*

En la cláusula número 1 del contrato de fianza, aquí bajo examen, diafanamente se dispone que el contratista (Ten General) y la fiadora (AIICo) mancomunada y solidariamente se obligan con el dueño de la obra (Xuapa) a pagar de ser necesario por la mano de obra, materiales y equipos provistos para utilizarse en la ejecución del contrato de construcción. En la cláusula número 2 taxativamente se establece que la fiadora (AIIco) no tendrá dicha obligación con el dueño de la obra (Xuapa) cuando el contratista pague, directamente o indirectamente, todas las sumas adeudadas a los reclamantes o suplidores impagados, lo que no ha ocurrido en el presente caso.

En cuanto a si Xuapa es o no un reclamante, conforme a la definición de *"Claimant"* en la cláusula número 15.1 del contrato de fianza, a la luz de sus términos y condiciones, QUARE.

Un examen del contrato de fianza en el presente caso nos permite concluir que ciertamente entre AIICo y Ten General se establecieron estipulaciones a favor de terceros, incluyendo entre éstos a Xuapa como dueño de la obra. Véase Artículo 1209 del Código Civil, *supra; Bco. Central Corp. v. Yauco Homes, Inc., supra.*

En un contrato de fianza lo estipulado a favor de un tercero es lo que rige en cualquier controversia que surja del mismo. Véase *D'All Concrete Mix v. R. Fortuño Inc., supra.*

La determinación de si la estipulación a favor de tercero justifica la reclamación de Xuapa contra AIIco, no es una cuestión estrictamente de derecho, sino una cuestión de hecho que tiene que dilucidarse en su fondo y que en esta etapa no debe ser objeto de un dictamen desestimatorio. ■ Véase *Banco Central Corp. v. Yauco Homes, Inc., supra.*

Como Xuapa entendió que podía estar en riesgo de verse obligada a pagar injustamente por los materiales suplidos por Fast Steel para su obra, amparándose en el ordenamiento procesal vigente y de manera contingente, presentó la demanda contra coparte aquí objeto de cuestionamiento por AIICo. Véase Regla 11.7 de Procedimiento Civil, *supra.*

Así las cosas, cuando AIICo solicitó del T.P.I. la desestimación de la demanda, al negarse a ello dicho foro, obviamente presumió como ciertos los hechos bien alegados por Xuapa en la demanda contra coparte. Véase *García Gómez et. Al. v. E.L.A. et. al., supra; Roldán Rosario v. Lutron S.M. Inc., supra; Unisys v. Ramallo Brothers, supra; Granados Navedo v. Rodríguez Estrada I, supra; Ramos v. Marrero, supra); First Federal Savs. v. Asociación de Condómines, supra.*

De esa manera, enfocó el asunto en términos de lo dispuesto en las cláusulas número 1 y número 2 del contrato de fianza, de las cuales se desprende una estipulación contractual que en su día puede beneficiar a Xuapa. El T.P.I. interpretó los términos del contrato de fianza siguiendo la directriz jurisprudencial de liberalidad. Véase *Olazábal v. U.S. Fidelity, etc., supra.*

En última instancia, el propósito de este tipo de fianza es proteger al dueño de la obra frente a los materialistas y obreros a quienes el contratista seleccionado por éste ha dejado de pagarles.

No enfocar esta controversia de esta manera, sería dejar a la fiadora como un mero espectador de las reclamaciones en disputa, como ciertamente ocurre en el presente caso entre contratistas, subcontratistas y suplidores de mano de obra y materiales. Sobre todo, cuando la suma que a fin de cuentas adeude el dueño de la obra (Xuapa) al contratista principal (Ten General), dadas las alegaciones particulares de Ten General contra Nelan y de Xuapa contra Ten General, puede estar sujeta en su liquidación a cambios por reajustes y otras posibles reclamaciones entre dichas partes. Véase *Armstrong, Etc. v. Inter-Amer Builders, supra.*

En el presente caso, oportunamente el T.P.I. debe determinar el grado o la magnitud de la responsabilidad, si alguna, de AIICo para con Xuapa. Excluir en esta etapa a AIICo de la demanda contra coparte de Xuapa, sería liberarla prematuramente de responsabilidad. Con la demanda contra coparte instada, lo que Xuapa ha pretendido es exigir judicialmente a AIICo que cumpla con el contrato de fianza, de conformidad con todos sus términos y condiciones.

No incidió el T.P.I. al negarse a desestimar la demanda contra coparte en cuestión.

## V

**Disposición del Recurso**

Por los fundamentos antes expuestos, se deniega la expedición del auto solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 101

**1.** En este Artículo se establece que: *"[l]os que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista no tienen acción contra el dueño de ella, sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación."*

**2.** El contrato de fianza, para garantizar el pago por el contratista a los suplidores de mano de obra y de materiales de construcción, es usualmente conocido en nuestra industria de la construcción y en la de seguros y fianzas como *"payment bond"*.

**3.** En esta moción, Xuapa sostuvo que la moción de desestimación presentada por AIICo en este caso era idéntica a la que presentó en el caso civil número HICI2003-00708 de Rafael J. Nido, *Inc. v. M.C. Construction Corp.*, *et als*. En virtud de ello, Xuapa, en respuesta y oposición a la moción presentada, adoptó por referencia los argumentos expuestos en la moción en oposición presentada en el referido caso, la que incluyó como anejo.

**4.** L. Diez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1979, Vol. I., págs. 265-274.

**5.** En su oposición a la expedición del auto de *certiorari*, Xuapa alega lo siguiente: *"... Ten General le adeuda a Xuapa, ya que los daños causados por Ten a Xuapa sobrepasan la suma de retenido que en su momento hubiera podido tener Xuapa. Ver declaración del licenciado Juan Ramón Zalduondo Viera."*