

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Consejo de Titulares del Condominio Victoria Plaza, Etc.<br><br>Peticionarios<br><br>v.<br><br>Raúl Gómez Estremera y su Esposa María Cruz Romance, Et Al<br><br>Recurridos | Certiorari<br><br>2012 TSPR 12<br><br>184 DPR ____ |

Número del Caso: CC-2010-617

Fecha: 24 de enero de 2012

Tribunal de Apelaciones:

>    Región Judicial de San Juan Panel IV

Juez Ponente:

>    Hon. Luisa M. Colom García

Abogado de la Parte Peticionaria:

>    Lcdo. Rafael J. López Rivera

Abogados de la Parte Recurrida:

>    Lcdo. Domingo Arturo Quiles Rosado
>    Lcdo. Luis A. Meléndez-Albizu

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo de Titulares del
Condominio Victoria Plaza,
Etc.

        Peticionarios

v.

Raúl Gómez Estremera y su
esposa María Cruz Romance, Et
Al

        Recurridos

Certiorari

CC-2010-0617

Opinión del Tribunal emitida por el Juez Asociado señor Rivera García

En San Juan, Puerto Rico, a 24 de enero de 2012.

En esta ocasión debemos interpretar el alcance del Art. 42 de la Ley de Condominios, Ley Núm. 103-2003 (31 L.P.R.A. sec. 1293f). Además, nos corresponde resolver si una causa de acción en daños y perjuicios por parte de un titular de un apartamento dedicado a vivienda contra el Consejo de Titulares o su Junta de Directores, se encuentra subsumida dentro del procedimiento ordinario para impugnaciones sobre determinaciones, acuerdos, acciones u omisiones de la Junta de Directores.

Específicamente, debemos determinar si el Tribunal de Primera Instancia, por vía de una reconvención compulsoria al amparo de la Regla 11.1 de Procedimiento Civil, *infra*, y sustentada en el principio de economía procesal, adquiere jurisdicción para atender reclamaciones de un condómino hacia la Junta de Directores y/o el Consejo de Titulares.[1]

I

El Condominio Victoria Plaza (Condominio) es un edificio residencial sometido al régimen de propiedad horizontal y localizado en el área del Condado, ubicada en el Municipio de San Juan. Está compuesto por treinta y cinco (35) apartamentos residenciales distribuidos en dieciocho (18) pisos o plantas. Los hechos que dan origen a esta controversia surgen luego de que el 21 de mayo de 2008 ocurriera un desbordamiento de agua proveniente del Apartamento 2-B, propiedad de los recurridos Raúl Gómez Estremera y su señora esposa, María Cruz Romance. A su vez, dicha inundación causó daños al elevador de servicios del Condominio. El costo y la labor para reparar el ascensor averiado fue de $10,765.00. Mediante una Asamblea Extraordinaria celebrada el 11 de agosto de 2008, se

---

[1] Los hechos procesales que originaron el recurso de epígrafe tuvieron lugar durante la vigencia de las Reglas de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. II, por lo que haremos referencia a dicho cuerpo de reglas para disponer de la controversia que nos ocupa. No obstante, la Regla 11 de Procedimiento Civil de 1979, *supra*, no fue objeto de cambios significativos en las Reglas de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V. Consecuentemente, la doctrina que pautamos a través de esta Opinión es vinculante a la interpretación y aplicación de la Regla 11 de Procedimiento Civil de 2009, *supra*.

autorizó a la Junta de Directores a desembolsar fondos comunales para el pago de la reparación requerida.[2]

Por su parte, los esposos Gómez-Cruz presentaron una reclamación extrajudicial al Consejo de Titulares por los daños sufridos, la cual fue referida a la aseguradora Universal Insurance Company. La reclamación fue atendida por ajustadores de la compañía de seguros quienes notificaron a los recurridos el 23 de septiembre de 2008, que el Consejo de Titulares no era responsable ya que no existía una relación causal entre los daños sufridos y los trabajos realizados en el Condominio.

A tales efectos, y luego de requerirle infructuosamente a los recurridos el pago de las cantidades desembolsadas para las reparaciones, el Consejo de Titulares, representado por su Presidente Joaquín Martínez Viguie, instó una demanda en daños y perjuicios contra éstos el 25 de febrero de 2009. Por su parte, los recurridos presentaron el 12 de junio de 2009 su contestación a la demanda y reconvención alegando que el 20 de mayo de 2008, personal contratado por el Condominio realizó trabajos en la cisterna del inmueble, vaciándola totalmente, limpiándola y volviéndola a llenar. Exponen que durante la madrugada del día de los hechos se escuchaban ruidos y vibraciones en la tubería del Condominio y que el agua salía con presión a intervalos y disparos de aire.

---

[2] Véase, Apéndice petición de *certiorari* pp. 34-35.

Consecuentemente, una tuerca de las mangas de la caja de agua del inodoro del baño del apartamento 2-B se rompió, causando así que se inundara el apartamento.[3] El líquido desbordado salió del apartamento y desembocó al elevador de servicios, causándole serios daños. En esencia, los Esposos Gómez-Cruz negaron ser causantes del incidente y por el contrario alegaron afirmativamente que la causa de la rotura e inundación fue el problema de alta presión en las tuberías.

Acorde con lo intimado, formularon varias causas de acción en su reconvención por negligencia, en la cual solicitaron el resarcimiento de los daños causados a su propiedad, y los daños físicos, mentales y morales causados al Sr. Gómez Estremera.

Es menester destacar que, según surge de las alegaciones de la reconvención, el personal de seguridad del Condominio intentó cerrar la llave de paso de agua ubicada en el área de los contadores fuera del apartamento. Sin embargo, no fue posible interrumpir oportunamente el flujo de agua debido al deterioro de ésta. La aludida llave

---

[3] Cabe señalar además que, según se desprende de la reconvención, alegadamente "En o alrededor del 16 de julio de 2006, uno de los tubos del calentador de línea del Apartamento 5-B sufrió daños como resultados de cambios de la presión de agua. En esa ocasión, se afectó el elevador de servicios, el cual fue reparado por la compañía Otis. Luego, en o alrededor del 21 de diciembre de 2007, la toma de agua del Apartamento 17-B se rompió debido a problemas en la presión de agua. Posteriormente, el 13 de febrero de 2008, el Apartamento 18-B sufrió daños en su tubería que causó un desbordamiento de agua que afectó otra vez el funcionamiento del elevador de servicios. Estos tres incidentes eran del conocimiento de la Junta de Directores, sus miembros, la Administración y el Consejo de Titulares. Ninguno de los titulares de estos apartamentos...fueron demandados por el Consejo de Titulares por los daños causados al elevador de carga o a cualquier otra propiedad comunal." Véase, Apéndice petición de certiorari, pp. 42-43.

de paso es propiedad del Condominio y está bajo su exclusivo control y mantenimiento. No fue hasta que los recurridos personalmente cerraron la llave de paso del inodoro dentro de su apartamento que finalmente se detuvo la inundación.

Así las cosas, el Condominio presentó una solicitud de desestimación de la reconvención, en la que argumentó que la reclamación de los esposos Gómez-Cruz en contra del Consejo de Titulares no podía ser atendida por el Tribunal de Primera Instancia debido a que dicho foro carece de jurisdicción sobre la materia. Esgrimió que el foro adecuado para dirimir la referida reclamación es el Departamento de Asuntos del Consumidor (DACo). Basó su contención en el Artículo 42 de la Ley de Condominios, *supra*, el cual le confiere jurisdicción al DACo para atender todas las impugnaciones de acuerdos que tome el Consejo de Titulares, así como las determinaciones, actuaciones u omisiones de la Junta de Directores con relación a la administración de un inmueble cuyos apartamentos estén dedicados a vivienda.

Los recurridos se opusieron a dicha solicitud bajo el fundamento de que el foro de instancia advino en jurisdicción del caso una vez los comparecientes instaron la demanda en su contra. Sostienen que se vieron obligados a presentar su reconvención por ser ésta una de carácter compulsorio.

CC-2010-0617

Luego de varias incidencias procesales, el 16 de abril de 2010 el Tribunal de Primera Instancia declaró no ha lugar la solicitud de desestimación de la reconvención presentada por el peticionario. Insatisfechos con el referido dictamen, el Consejo acudió al Tribunal de Apelaciones mediante un recurso de *certiorari*. El 14 de junio de 2010 el foro apelativo intermedio dictó una Resolución denegando el auto solicitado y confirmando la determinación recurrida. El tribunal *a quo* fundamentó su decisión concluyendo que el foro de instancia no abusó de su discreción ya que "la naturaleza de ambas reclamaciones evidencia que las mismas surgen de unos mismos hechos, por lo que la parte demandada-recurrida estaba en la obligación de presentar la reconvención".[4]

No conteste con esta determinación, el peticionario presenta ante este Tribunal el recurso de *certiorari* de epígrafe en donde plantea los siguientes errores:

**Erró el Honorable Tribunal de Apelaciones al resolver que el Tribunal de Primera Instancia, por vía de una Reconvención compulsoria, puede atender asuntos sobre los cuales no tiene jurisdicción sobre la materia.**

**Erró el Tribunal de Apelaciones al no considerar si es el DACo el foro con jurisdicción exclusiva para atender los asuntos planteados en la Reconvención relacionadas a los reclamos de los titulares Recurridos sobre las decisiones, acciones u omisiones del Consejo de Titulares y/o de su Junta de Directores, al administrar un Condominio residencial.**

---

[4] Véase, Apéndice petición de *certiorari*, p.10.

Atendido el recurso, el 21 de enero de 2011 expedimos el auto de *certiorari* solicitado. Contando con el beneficio de los alegatos de ambas partes, procedemos a resolver.

Conforme a lo anterior, y reconociendo que el Condominio Victoria Plaza está sometido al régimen de propiedad horizontal, procede que examinemos las disposiciones de la Ley de Condominios, *supra*, para el análisis de las controversias ante nos.

II

A

La Ley de Condominios, Ley Núm. 103-2003, *supra*, establece mecanismos para la tramitación de los inevitables conflictos dimanantes del *modus vivendi* de un condominio. Véase, <u>Srio. D.A.C.O. v. Condóminos C. Martí</u>, 121 D.P.R. 807 (1988). Además, detalla el marco organizacional del gobierno interno, cuyo organismo rector y deliberativo lo es el Consejo de Titulares que a su vez rige, según la Ley de Propiedad Horizontal, la escritura matriz y el reglamento. <u>Srio. D.A.C.O. v. Condóminos C. Martí</u>, supra. En armonía con lo anterior, esta legislación dispone en lo pertinente que:

> El Consejo de Titulares, la Junta de Directores y el Agente Administrador del condominio, tienen como deber primordial orientar sus acciones salvaguardando el principio de que el propósito del régimen de propiedad horizontal es propiciar el disfrute de la propiedad privada sobre el apartamiento y que la administración de las áreas y haberes comunes del edificio se realiza para lograr el pleno disfrute de este derecho. Correlativamente cada titular reconoce que el ejercicio del dominio en el régimen de propiedad horizontal está limitado por los derechos de los demás condóminos y que el

derecho de propiedad sobre su apartamiento tiene que ejercerse dentro del marco de la sana convivencia y el respeto al derecho ajeno.[5]

Por consiguiente, la Asamblea Legislativa entendió que era necesario delegar ciertos deberes y facultades a la Junta de Directores como órgano ejecutivo de la comunidad de titulares. Entre éstos se encuentra:

(a) Atender todo lo relacionado con **el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales**, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares. ....

(g) Atender a la **conservación** del inmueble y disponer las reparaciones ordinarias y en cuanto a las extraordinarias, adoptar las medidas necesarias dando inmediata cuenta al Consejo.

(i) Cumplir y hacer cumplir las disposiciones de este Capítulo, del reglamento y los acuerdos del Consejo de Titulares.

(Énfasis nuestro.) Artículo 38d, Ley Núm. 103-2003, *supra*.

La responsabilidad fundamental de la Junta de Directores "estriba en velar por el buen funcionamiento del condominio logrando que se ejecuten las disposiciones de la Ley de Propiedad Horizontal, la de la Escritura Matriz, del Reglamento del Condominio, así como los acuerdos que se hayan aprobado en reuniones debidamente convocadas por el Consejo de Titulares." M. J. Godreau, Personalidad jurídica, legitimación activa y propiedad horizontal: Capacidad legal de la Junta de Directores y del presidente para llevar acciones a nombre del condominio, 64 Rev. Jur. U.P.R. 481, 481 (1995). Véanse además, Consejo Cond. Plaza

---

[5] Artículo 1-A, Ley Núm. 103-2003, *supra*.

del Mar v. Jetter, 169 D.P.R. 643, 658 (2006); Amill Bracer v. J. Dir. Cond. Pumarada, 156 D.P.R. 495, (2002); Srio. D.A.C.O. v. Condóminos C. Martí, supra.

En lo referente a las impugnaciones de acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores, es de aplicación el Artículo 42 de la Ley de Condominios, supra. Esta disposición establece el foro adecuado y con jurisdicción para presentar las distintas acciones de impugnación bajo el régimen de propiedad horizontal:

> Los acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores, del titular que somete el inmueble al régimen que establece esta Ley, durante el período de administración que contempla el Artículo 36-A, del Presidente y del Secretario, concernientes a la administración de inmuebles que no comprendan apartamientos destinados a vivienda o de titulares de apartamientos no residenciales en los condominios en donde exista por lo menos un apartamiento dedicado a vivienda, serán impugnables ante el Tribunal de primera instancia por cualquier titular que estimase que el acuerdo, determinación, omisión o actuación en cuestión es gravemente perjudicial para él o para la comunidad de titulares o es contrario a la ley, a la escritura de constitución o al Reglamento a que hace referencia el Artículo 36. **Las impugnaciones por los titulares de apartamientos destinados a viviendas se presentarán ante el Departamento de Asuntos al Consumidor.**
> (Énfasis suplido.)

Así pues, acorde con los poderes conferidos por la referida Ley, el DACo promulgó el Reglamento Núm. 6728 sobre Condominios, aprobado al amparo de la Ley Núm. 103-

2003, *supra*.[6] En éste, se dispuso lo siguiente en cuanto a la jurisdicción del Departamento:

PARTE V QUERELLAS

SECCIÓN 26: JURISDICCIÓN DEL DEPARTAMENTO

[...]

El Departamento no tendrá jurisdicción para adjudicar querellas que surjan en condominios de uso exclusivamente comercial o profesional. Igualmente carecerá de jurisdicción en aquellos condominios donde exista por lo menos una unidad de vivienda, y la querella sea interpuesta por un titular o grupo de titulares de apartamentos no residenciales. En estos casos la jurisdicción corresponderá al Tribunal de Primera Instancia. El Departamento sólo atenderá reclamaciones del titular o grupo de titulares que sean propietarios de las unidades residenciales.

También quedará excluido de la jurisdicción del Departamento, toda reclamación que consista en cuestionar alguna cláusula contenida en la escritura matriz o el reglamento del condominio inscrito en el Registro de la Propiedad. Igualmente quedan excluidos [sic] las querellas entre titulares **o cuando el Consejo de Titulares o el Director o la Junta de Directores entable reclamación contra uno o varios titulares o residentes del condominio. La jurisdicción para ventilar estas acciones corresponderá al Tribunal de Primera Instancia.** (Énfasis suplido.)

Siendo ello así, la Ley de Propiedad Horizontal encomendó al foro administrativo, el DACo, la rápida adjudicación de los reclamos que pudieran presentar los condóminos, relativos a la administración del edificio. Amill Bracer v. J. Dir. Cond. Pumarada, supra, pág. 500. Igualmente, le confirió jurisdicción exclusiva para entender en acciones de impugnación de los acuerdos del Consejo de Titulares, de las determinaciones, actuaciones u

---

[6] Este estatuto derogó el Reglamento 2438 sobre Condominios, promulgado al amparo de la Ley Núm. 157-1976 (1976 Leyes de Puerto Rico 485).

omisiones del Director o de la Junta de Directores, relacionadas con la administración de inmuebles que comprendan por lo menos un apartamento destinado a vivienda. Amill Bracer v. J. Dir. Cond. Pumarada, supra. Véase además, Consejo Cond. Plaza del Mar v. Jetter, 169 D.P.R. 643, 659 (2006); Srio. D.A.C.O. v. Condóminos C. Martí, supra; First Fed. Savings v. Asoc. de Condómines, 114 D.P.R. 426 (1983).

No obstante, la jurisdicción exclusiva conferida al DACo no se extiende a toda posible causa de acción dimanante de un condominio sometido al régimen de propiedad horizontal. Consejo Cond. Plaza del Mar v. Jetter, supra, pág. 662. (Énfasis suplido.)

Al tenor de todo lo anterior, y según surge de la interpretación de DACo en su comparecencia como amicus curiae en Cond. Plaza del Mar v. Jetter, supra, la Ley de Propiedad Horizontal del 1976 no le confirió jurisdicción para dirimir reclamaciones o acciones que puedan hacerse entre sí los titulares o aquellas presentadas por el director o por la Junta de Directores en representación del Consejo de Titulares contra un titular. Al respecto, DACO manifestó:

> "...[S]i el titular o grupo de titulares de un condominio ejercita la acción de impugnación que le autorizan los Artículos 42 y 48 de la Ley, y a la vez solicita indemnización que pudiera corresponderle bajo el Código Civil por daños ocasionados por la conducta negligente de los cuerpos ejecutivos del Condominio, este Departamento podría adjudicar ambas reclamaciones al estar autorizado para ello, por virtud de lo dispuesto en el Artículo 51 [de la concernida Ley]. Sin embargo,

no es esa la situación del caso de autos...**Al Departamento nunca le ha sido conferida jurisdicción para atender reclamos que puedan realizarse entre sí los titulares o aquellas presentadas por el director o la Junta de [D]irectores en representación del Consejo de Titulares, contra un titular**…"

Cond. Plaza del Mar v. Jetter, supra, pág. 663. (Énfasis suplido).

Del mismo modo, la Ley de Condominios, *supra* establece el término que posee el titular afectado para llevar a cabo dicha impugnación. El inciso (a) procura

> reducir el número de querellas ante el foro administrativo, al requerir del querellante que ventile primero ante los organismos internos del condominio, bien ante la propia Junta o ante un Comité de Conciliación, cualquier querella en la que se cuestione una acción u omisión del Administrador o de la propia Junta.
>
> M. Godreau, La Nueva Ley de Condominios, Ed. Dictum, San Juan, 2da ed., 2003, pág. 39.

Con este procedimiento se persigue "acreditar ante la agencia que se le hizo el planteamiento ante el organismo interno y que éste, o no lo atendió oportunamente, o si lo atendió se ratificó en la acción o en la omisión que el titular entiende le es gravemente perjudicial". Id., pág. 39.

> La presentación de la reclamación internamente tendrá que hacerse dentro del término de treinta (30) días de conocida la acción u omisión que se impugna. La Junta o el Comité de Conciliación en su caso tendrán treinta (30) días para resolver el asunto. Si el titular considera adversa la decisión de la Junta o del Comité, podrá entonces recurrir al DACO. De igual forma, si la Junta o el Comité no toman acción dentro de los sesenta (60) días desde que el titular sometió su queja, puede éste recurrir a la agencia con su querella. El DACO se reserva la facultad de eximir al titular de agotar este procedimiento, si así lo ameritase la naturaleza del caso.
> Id.

En cuanto al término de prescripción para ejercer la acción, el inciso (c) del Art. 42 señala:

> (c) La acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Consejo de Titulares, con excepción de los realizados por el titular que somete el inmueble al régimen, que violen las disposiciones de esta Ley, de la escritura matriz o del Reglamento del condominio, **prescribirá a los dos (2) años de haberse notificado el acuerdo, tomado la acción o de conocerse la omisión.** Para los titulares que impugnen este tipo de acuerdo del Consejo de Titulares, el término se computará a partir de la notificación del mismo, siempre y cuando cumplan con los requisitos establecidos en el párrafo siguiente.
>
> Al ejercitar la acción de impugnación de acuerdos del Consejo de Titulares, el titular deberá acreditar que estuvo presente o representado en la reunión en que se tomó el acuerdo que impugna y que no votó a favor del mismo. Si estuvo ausente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada. (Énfasis suplido.)

Por tanto, el término para impugnar una determinación bajo el Artículo 42 dependerá de dos factores. Primero, contra quién se dirige la acción. Segundo, el fundamento de la impugnación. Si la acción de impugnación es contra el Agente Administrador o la Junta de Directores, se seguirá el procedimiento dispuesto por el Artículo 42(a) y el término será de 30 días. Si se impugnan los acuerdos y determinaciones del Consejo de Titulares porque a juicio del titular estas son "gravemente perjudiciales para él", se recurrirá al Artículo 42(b) y el término será, igualmente, de 30 días.

Ahora bien, si lo que se impugna son los acuerdos, acciones u omisiones de la Junta de Directores o el Consejo de Titulares alegándose que éstos han violado la

Ley de Condominios, el Reglamento de la comunidad o la escritura matriz, el término será de dos (2) años, según dispone el artículo 42(c). En todos estos casos, el foro con jurisdicción primaria exclusiva es el Departamento de Asuntos del Consumidor.

Establecido el alcance de las disposiciones aplicables bajo la Ley de Condominios, *supra*, es menester analizar la figura de la reconvención y su función bajo la Regla 11.1 de Procedimiento Civil, *supra*.

B

La Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 10.2, establece que toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva, ya sea demanda, reconvención, demanda contra coparte o demanda contra tercero. A menos que, a opción de la parte que alega, pueda formular las siguientes defensas mediante moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; y (6) dejar de acumular una parte indispensable.

Reiteradamente hemos señalado que cuando los tribunales se enfrentan a una moción de desestimación, deberán examinar los hechos alegados en la demanda lo más liberalmente posible a favor de la parte demandante. Así,

no procede la desestimación a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación.[7] De este modo, los tribunales tienen el deber de considerar, si a la luz de la situación más favorable al demandante y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida.[8]

De igual modo, una parte puede presentar una reclamación contra una parte adversa a través del mecanismo de la reconvención. Conforme al ordenamiento procesal vigente, existen dos (2) tipos de reconvenciones: las permisibles y las compulsorias. S.L.G. Font de Bardón v. Mini-Warehouse Corp., 179 D.P.R. 322, 332 (2010). Las reconvenciones permisibles son aquellas reclamaciones que no surgen del mismo acto, omisión o evento que motivó la reclamación de la parte contra la que se presenta.[9] La Regla 11.1 de Procedimiento Civil, *supra*, R. 11.1, regula lo concerniente a las reconvenciones compulsorias. Al respecto, dispone lo siguiente:

> Una alegación contendrá por vía de reconvención cualquier reclamación que la parte que la formula tenga contra cualquier parte adversa al momento de notificar dicha alegación, **siempre que surja del acto, de la omisión o del evento que motivó la reclamación de la parte adversa** y no requiera para

---

[7] Véanse, Rivera v. Jaume, 157 D.P.R. 562 (2002); Clemente v. Dpto. de la Vivienda, 114 D.P.R. 763 (1983); Reyes v. Sucn. Sánchez Soto, 98 D.P.R. 305 (1970).

[8] Véanse, Pressure Vessels P.R. v. Empire Gas P.R., 137 D.P.R. 497 (1994); Unisys v. Ramallo Brothers 128 D.P.R. 842 (1991).

[9] Regla 11.2 de Procedimiento Civil, *supra*.

su adjudicación la presencia de terceros sobre quienes el tribunal no pueda adquirir jurisdicción. Sin embargo, no será necesario incluir dicha reclamación mediante reconvención, si al momento de comenzarse el pleito tal reclamación era ya objeto de otro pleito pendiente. (Énfasis suplido.)

En virtud de ello, una parte que tenga una reclamación dimanante del mismo acto, omisión u evento objeto de una demanda, deberá notificar a su contraparte una reconvención al momento de presentar su alegación respondiente. Consecuentemente, la Regla 11.1, *supra*, obliga a la parte demandada a formular, al momento de su contestación, cualquier reclamación compulsoria, es decir, cualquier reclamación que tenga contra la parte adversa, si ésta surge de la acción u omisión, o evento que motiva la reclamación de la parte demandante. Neca Mortgage Corp. v. A & W Developers, 137 D.P.R. 860, 866 (1995). **El propósito de esta regla es evitar la multiplicidad de litigios al establecer un mecanismo para dilucidar todas las controversias comunes en una sóla acción.** (Énfasis suplido.) Neca Mortgage Corp. v. A & W Developers, supra.

Una reconvención es compulsoria: (1) si existe una relación lógica entre la reclamación presentada en la demanda y la que es objeto de la reconvención; **(2) cuándo los hechos esenciales de ambas reclamaciones están tan vinculados que la economía judicial exige que se ventilen de conjunto;** (3) si las cuestiones de hecho y de derecho entre ambas son las mismas; (4) si la doctrina de *res judicata* impediría una acción independiente; y (5) si ambas reclamaciones surgen de la misma prueba y están

vinculadas lógicamente. R. Hernández Colón, Práctica jurídica de Puerto Rico: Derecho procesal civil, 3ra ed., San Juan, Ed. LexisNexis de Puerto Rico, Inc., 2007, pág. 218.

Ahora bien, si una reconvención compulsoria no se formula a tiempo, se renuncia a la causa de acción que la motiva; y quedarán totalmente adjudicados los hechos y reclamaciones sin que el demandado pueda presentar posteriormente una reclamación que haya surgido de los mismos eventos. S.L.G. Font de Bardón v. Mini-Warehouse Corp., supra, pág. 333; Neca Mortgage Corp. v. A & W Developers, supra, pág. 867. Le será aplicable, por analogía, el principio de cosa juzgada, al efecto de que será concluyente en relación a aquellos asuntos que pudieron haber sido planteados y no lo fueron. Sastre v. Cabrera, 75 D.P.R. 1, 3 (1953).

En Sastre v. Cabrera, supra, resolvimos que cuando se presenta una demanda ante un tribunal, cuya competencia está limitada por razón de la cuantía, el demandado viene obligado a presentar su reconvención compulsoriamente, aun cuando la cuantía reclamada en la reconvención exceda de aquella que limita la competencia del tribunal ante el cual pende el pleito. La congestión de pleitos y la litigación repetitiva puede eludirse obligando a que todas las reclamaciones relacionadas entre sí se ventilen en un mismo proceso. J. Cuevas Segarra, Tratado de Derecho

Procesal Civil, 2da ed., Ed. Publicaciones JTS, 2011, T.

II, pág. 558.[10]

De igual forma, en el ámbito federal, la presentación

de una reconvención compulsoria surge como motivo de

cualquier reclamación que se tenga contra la parte adversa,

si ésta surge de la acción u omisión, o evento que motiva

la reclamación de la parte demandante. Nuestra Regla 11.1

de Procedimiento Civil, *supra*, procede, en su mayoría, de

la Regla 13(a) de Procedimiento Civil Federal.[11] En ese

---

[10] Véase, además, R.G. Financial Corp. v. Vergara-Nuñez, 446 F. 3d 178 (2006), y la anotación Failure to assert matter as counter-claim as precluding assertion thereof in subsequent action, under federal rules on similar states rules or statutes, 22 ALR 2d 621.

[11] La Regla 13(a) de Procedimiento Civil Federal, 28 U.S.C.A. R. 13, dispone, en lo pertinente:

**(a) Compulsory Counterclaim.**

(1) In General.

A pleading must state as a counterclaim any claim that — at the time of its service — the pleader has against an opposing party if the claim:

(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

(B) does not require adding another party over whom the court cannot acquire jurisdiction.

(2) Exceptions.

The pleader need not state the claim if:

(A) when the action was commenced, the claim was the subject of another pending action; or

(B) the opposing party sued on its claim by attachment or other process that did not establish personal jurisdiction over the pleader on that claim, and the pleader does not assert any counterclaim under this rule.

**(b) Permissive Counterclaims.**

A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.

sentido, la exégesis conferida en el entorno federal al mecanismo de la reconvención es persuasiva para este Tribunal en la medida que no sea contraria al texto de nuestra regla o al marco interpretativo de nuestras normas procesales civiles.

Como corolario de la doctrina, los tribunales apelativos federales han interpretado liberalmente esta regla en aras de exhortar a la proliferación del principio de economía judicial. En Xerox Corp. v. SCM Corp., 576 F. 2d 1057, 1059 (3d Cir. 1978), la corte federal para el tercer circuito expresó:

> [...]
> a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action.[12]

Similar exégesis para adjudicar ambas reclamaciones en un mismo pleito ha sido plasmada por el Tribunal Supremo de los Estados Unidos. El raciocinio consiste en el deseo de evitar sujetar las partes a resultados inconsistentes

---

[...]

[12] Véase además, Great Lakes Rubber Corp. v. Herbert Copper Co., 286 F. 2d 631, 634 (3d Cir. 1961).

provenientes de diferentes foros.[13] Así pues, la doctrina de cosa juzgada es de aplicación al denegar una reclamación que debió haber sido presentada anteriormente como parte de una reconvención compulsoria. Esto es así ya que los hechos, controversias y las partes de la reconvención son sustancialmente idénticos a los hechos, controversias y las partes de la reclamación original. Koppers Company, Inc. v. American Express Company, 121 F.R.D. 46, 49 (1988).

En lo pertinente a las objeciones basadas en falta de jurisdicción, la jurisprudencia procesal interpretando la Regla 13(a) de Procedimiento Civil Federal, *supra*, ha sostenido que una reconvención compulsoria es válida y puede ser presentada en el tribunal; siempre y cuando la demanda original cumpla con los requisitos necesarios para que el foro federal pueda asumir jurisdicción sobre la misma.[14]

En armonía con lo anterior, los tribunales apelativos federales han reiterado que al demandante entablar su reclamación en el foro judicial, se encuentra imposibilitado de objetar el que una reconvención compulsoria sea radicada en el mismo escenario que la demanda original. Es decir, renuncia a su derecho de objetar una alegada falta de jurisdicción en la

---

[13] Véase, Montana v. United States, 440 U.S. 147, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979).

[14] Véase, Lesnik v. Public Industrials Corporation, 144 F. 2d 968 (C.C.A. 2d Cir. 1944).

reconvención.[15] A tales efectos, los profesores Wright, Miller y Kane articulan en su tratado de derecho procesal como sigue:

> Plaintiff may not object that the court lacks personal jurisdiction or that venue is improper for purposes of adjudicating a compulsory counterclaim that defendant has interposed. By choosing a particular forum in which to seek affirmative relief, plaintiff effectively waives any objections to that forum based on personal inconvenience. Moreover, Section 1391 of Title 28, which sets forth the statutory venue scheme, speaks in terms of where a suit may be "brought." **Courts typically have interpreted this reference literally and have held that in the counterclaim context the suit already has been "brought" and the statutory requirements have been satisfied on the basis of the original claim. Therefore, a defendant who is forced to assert a counterclaim under Rule 13(a) may do so even though venue would not be proper if the counterclaim were prosecuted as an independent suit.** (Énfasis suplido.) 6 Wright, Miller and and Kane, <u>Federal Practice and Procedure: Pleadings and Motions</u>, Sec. 1416, págs. 140-142 (2010).

Analizado el marco jurídico que alberga la Regla 11.1 de Procedimiento Civil, *supra*, pasemos a examinar los preceptos reconocidos en nuestro ordenamiento jurídico aplicables a la interpretación de las leyes y al principio de hermenéutica legal.

C

El Artículo 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14, dispone que cuando la ley es clara y libre de toda ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir con su espíritu.

---

[15] Véanse, <u>Schoot v. U.S.</u>, 664 F. Supp. 293, 295 (N.D. Ill. 1987); <u>Watson v. Manhattan and Bronx Surface Transit Operating Authority</u>, 487 F. Supp. 1273, 1276 (D.N.J. 1980); <u>Lesnik v Public Industrials Corporation</u>, supra.

Empero, este enunciado de auto-limitación no implica que el tribunal quede imposibilitado de ejercer un rol de intérprete de la ley. En cuanto a la discreción judicial, esta Curia ha expresado que:

> [l]os tribunales estamos autorizados a **interpretar** las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma; o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere. (Énfasis en el original.) Pueblo v. Ortega Santiago, 125 D.P.R. 203, 214 (1990).[16]

De igual forma hemos resuelto en cuanto a la interpretación literal de las leyes, que la letra de la ley no debe seguirse ciegamente cuando ello iría en detrimento de su espíritu y su fin. Sucn. Álvarez v. Srio. De Justicia, 150 D.P.R. 252, 274 (2000).[17] En ese sentido, es de aplicación el principio rector en materia de hermenéutica esbozado en el caso de Morell et al. v. Ojeda et al., 151 D.P.R. 864, 877 (2000), en el cual se aclara que [a]l interpretar una disposición específica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un

---

[16] Véase, además: Alonso García v. S.L.G., 155 D.P.R. 91, 98 (2001); Sucn. Álvarez v. Srio. de Justicia, 150 D.P.R. 252 (2000); Bco. Popular de P.R. v. Mun. De Aguadilla, 144 D.P.R. 651 (1997).

[17] Véase, además: Pueblo v. Zayas Rodríguez, 147 D.P.R. 530(1999).

sentido que asegure el resultado que originalmente se quiso obtener.[18]

Similar exégesis acogimos en Mun. San Juan v. Banco Gub. Fomento, 140 D.P.R. 873 (1996), en el cual aclaramos que cuando el lenguaje de un estatuto falla en mostrar la intención legislativa, es necesario rechazar la interpretación literal, cuando esta es claramente contraria a la verdadera intención o propósito legislativo. Además expresamos que cualquier interpretación de ley que conduzca a una conclusión absurda, ha de ser rechazada, pues al ejercer nuestra función interpretativa, estamos obligados a armonizar, en la medida posible, todas las disposiciones de ley involucradas en aras de obtener un resultado más sensato, lógico y razonable. Id., pág. 884. Así pues, aplicamos estas normas de hermenéutica legal, que no son arbitrarias o caprichosas, pues todas descansan en sanos principios de lógica. Central Boca Chica, Inc. v. Tesorero de P.R., 54 D.P.R. 424, 432 (1939).

Con estos principios como norte, procedemos a atender la situación fáctica que nos ocupa.

III

En su recurso, el peticionario plantea, en síntesis, que el Tribunal de Primera Instancia erró al denegar su moción de desestimación a la reconvención de los

---

[18] Véanse también: Dorante v. Wrangler of P.R., 145 D.P.R. 408 (1998); Chase Manhattan Bank v. Mun. de San Juan, 126 D.P.R. 759, 766 (1990); R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes de Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1987, pág. 245.

recurridos. Específicamente, arguye que la controversia sobre la aplicabilidad de la jurisdicción del DACo bajo el Artículo 42 de la Ley de Condominios, *supra*, es un asunto de "jurisdicción sobre la materia". No le asiste la razón. Por el contrario, se trata sobre la doctrina de jurisdicción primaria. Veamos.

La aplicación de la doctrina de jurisdicción primaria exige que los tribunales emprendan la tarea de examinar los alcances de la ley habilitadora de una agencia y determinar si el asunto cae estrictamente dentro de su ámbito. Además, le exige que ponderen y determinen si es imprescindible y necesario que se resuelva en favor de que intervenga inicialmente la agencia. D. Fernández Quiñones, Derecho Administrativo y la Ley de Procedimiento Administrativo Uniforme, 2da ed., Colombia, Ed. Forum, 2001, pág. 443.

No debemos perder de perspectiva que este Tribunal ha resuelto que la doctrina de jurisdicción primaria no es una camisa de fuerza, y bajo ciertas circunstancias hemos reconocido su inaplicabilidad. Ortiz v. Panel del F.E.I, 155 D.P.R. 219, 246 (2001). Así pues, no aplica cuando "[l]a naturaleza de la causa de acción presentada y el remedio solicitado destacan que no se presentan cuestiones de derecho que exijan el ejercicio de discreción y de peritaje administrativo", es decir, cuando la cuestión que se plantea sea "puramente judicial". Ortiz v. Panel del F.E.I, supra, citando a D. Fernández Quiñones, op. cit., Sec. 8.4, págs. 443-444.

En resumidas cuentas, la regla general es que un tribunal debe aplicar la doctrina de jurisdicción primaria en todo caso en el cual el peritaje de una agencia sea indispensable para resolver la controversia. Ortiz v. Panel del F.E.I, supra, pág. 247. A modo de excepción, si la cuestión implicada es estrictamente de derecho, **(como lo es el caso de marras que versa sobre una reconvención basada en una causa de acción en daños y perjuicios bajo el Artículo 1802 del Código Civil),** el tribunal retendrá la jurisdicción. Ortiz v. Panel del F.E.I, supra.

Conviene puntualizar que el DACo retiene jurisdicción primaria exclusiva para entender en acciones de impugnación de los acuerdos del Consejo de Titulares, de las determinaciones, actuaciones u omisiones del Director o de la Junta de Directores, relacionadas con la administración de inmuebles que comprendan por lo menos un apartamento destinado a vivienda.

Cuando se impugnen los acuerdos del Consejo de Titulares, las determinaciones, actuaciones u omisiones del Director o las de la Junta de Directores, con relación a la administración de aquellos inmuebles que comprendan por lo menos un apartamento destinado a vivienda, se debe recurrir al Artículo 42 de la Ley de Condominios. Dependiendo del inciso que corresponda al fundamento de la impugnación, el término para presentar la acción será de 30 días o dos (2) años y el foro con jurisdicción primaria exclusiva es DACo.

Ahora bien, cuando la acción vaya dirigida al resarcimiento de daños bajo el Artículo 1802 del Código Civil, el término prescriptivo será el que se dispone en el Artículo 1868 de dicho Código[19] y no el del Artículo 42 de la Ley de Condominios. Por consiguiente, el término para presentar dicha acción es de 1 año y el foro con jurisdicción es el Tribunal de Primera Instancia.

Igualmente, en pleitos incoados por el Consejo de Titulares contra un titular individual bajo el Artículo 1802, las reconvenciones compulsorias que surjan del mismo Artículo no estarán sujetas al término de 30 días o dos (2) años, según sea el caso, ni a la jurisdicción exclusiva de DACo que establece el Artículo 42 de la Ley de Condominios.

Lo anterior nos parece razonable; por ende, nos vemos imposibilitados de avalar la postura asumida en la Opinión disidente. Ésta aplica erróneamente el Artículo 42 de la Ley de Condominios a circunstancias en las que el reclamo contra el Consejo de Titulares se basa en alegados daños causados por la negligencia de éste. Además, rechazamos el análisis que sostiene que la interpelación presentada por los recurridos está relacionada con los deberes que le impone la ley a dicho organismo.

Asimismo, aún si entendiéramos que aplica el Artículo 42 de la Ley de Condominios, **lo cual rechazamos**, aplicaría el inciso (b) de este. No debemos olvidar que el reclamo entablado contra el Consejo de Titulares se basa en las

---

[19] 31 L.P.R.A. sec. 5298.

acciones que el titular estimó eran "gravemente perjudiciales para él" y que estaban relacionadas a unos hechos que provocaron la inundación de su apartamento. En ningún momento se imputaron violaciones a la Ley del Condominio, al Reglamento o a la escritura matriz. Imponer esta carga a los titulares de apartamentos regidos por la Ley de Condominios, es una sumamente excesiva y onerosa.

No debemos perder de perspectiva que, el efecto que conllevaría endosar esta interpretación, limitaría excesivamente el término prescriptivo que ostenta un titular para presentar una acción contra el Consejo de Titulares por actuaciones perjudiciales mediando culpa o negligencia. Es decir, el plazo de 1 año que tendría bajo el Código Civil quedaría acortado a 30 días bajo la Ley de Condominios en casos bajo el Artículo 42(b) en los que no se alegue que el Consejo de Titulares violó la Ley de Condominios, el Reglamento de la comunidad o la escritura matriz. No nos convence este proceder, pues entendemos que el legislador no lo vislumbró de esta manera.

Peor aún, el efecto de interpretar este tipo de acción como una cobijada por el Artículo 42, provocaría que cualquier Consejo de Titulares que entendiera que tiene una causa de acción contra un titular pueda recurrir a la "inacción temporera" como medida estratégica. Esta consiste en no presentar la acción judicial y esperar que el titular, quien podría tener una reconvención legítima, se

quede sin un mecanismo para poder resarcir los daños una vez pase el término de 30 días anteriormente mencionado.

De las alegaciones de la reconvención presentada se desprende que la causa de acción que motivó la reconvención surge del Artículo 1802 del Código Civil y no del Artículo 42 de la Ley de Condominios. Por lo tanto, el Tribunal de Primera Instancia era el foro con jurisdicción para atender la misma. Recordemos que la causa de acción tuvo su génesis en el desbordamiento de agua proveniente del Apartamento 2-B, propiedad de los esposos Gómez Cruz. Este mismo suceso fue el que motivó la demanda original presentada por el peticionario. La naturaleza de ambas reclamaciones evidencia que las mismas surgen de unos mismos hechos, y consecuentemente los recurridos estaban en la obligación de presentar la reconvención, ya que, de lo contrario, se entendería renunciada y sería de aplicación por analogía la doctrina de cosa juzgada. Fíjese que mediante una reconvención, la parte demandada "puede disminuir o derrotar la reclamación de la parte adversa y también puede reclamar un remedio por cantidad mayor o de naturaleza diferente al solicitado en la alegación de la parte adversa", según dispone la Regla 11.3 de Procedimiento Civil, *supra*, 11.3.

Es importante señalar que es un reconocido principio el deber ministerial de los tribunales de velar por su jurisdicción. No obstante, el conducir a las partes a una innecesaria e indeseable multiplicidad de acciones, resulta

en un claro incumplimiento con este mandato. Permitir acreditar dentro del pleito las reclamaciones de los recurridos que forman parte de la reconvención, tendría el efecto de brindar más celeridad y economía judicial a los procesos. Este principio se encuentra encarnado en la Regla 1 de Procedimiento Civil que postula como factor preeminente que las disposiciones de ese cuerpo procesal **"[s]e interpretarán de modo que garanticen una solución justa, rápida y económica de todo procedimiento"**. (Énfasis suplido.) 32 L.P.R.A. Ap. III.

Cónsono con lo anterior, en <u>López Valdés v. Tribunal Superior</u>, 96 D.P.R. 779, 792 (1968), expresamos que "[u]n principio cardinal en nuestro derecho procesal es el de evitar la multiplicidad de pleitos, y de adjudicar en una causa las distintas reclamaciones de las partes cuando la naturaleza de las causas lo permiten". De igual forma, expusimos sobre la finalidad de la consolidación los siguientes propósitos: **"evitar la proliferación de acciones, lograr la economía procesal y evitar la indeseable probabilidad de que surjan fallos incompatibles relacionados con un mismo incidente."** (Énfasis suplido.) <u>Vives Vázquez v. E.L.A.</u>, 142 D.P.R. 117 (1996); <u>Granados v. Rodríguez Estrada II</u>, 124 D.P.R. 593, 608 (1989).

El caso de autos, trata de un peticionario que solicita revoquemos una determinación del foro a quo que precisamente evita el fraccionamiento de los procedimientos. La prueba a ser considerada por el tribunal

es la misma. La exigencia de que se diluciden las reclamaciones de los recurridos en el DACo, sin duda, representarán costos adicionales para ambas partes y una innecesaria dilación del trámite judicial. No hemos encontrado justificación razonable alguna para revocar la determinación tomada por el tribunal de instancia y confirmada por el tribunal apelativo intermedio. Por el contrario, los principios antes discutidos y las circunstancias particulares del caso de marras nos han convencido de que no se ha cometido error alguno.

IV

Por los fundamentos antes expuestos, se confirma la Resolución emitida por el Tribunal de Apelaciones. Se remite el caso al Tribunal de Primera Instancia para la continuación de los procedimientos a tenor con lo aquí resuelto.

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo de Titulares del
Condominio Victoria Plaza,                         Certiorari
       Etc.

    Peticionarios              CC-2010-0617

         v.

Raúl Gómez Estremera y su
esposa María Cruz Romance,
        Et Al

    Recurridos


SENTENCIA


En San Juan, Puerto Rico, a 24 de enero de 2012.

Por los fundamentos antes expuestos, se confirma la Resolución emitida por el Tribunal de Apelaciones. Se remite el caso al Tribunal de Primera Instancia para la continuación de los procedimientos a tenor con lo aquí resuelto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió una Opinión Disidente a la cual se unió el Juez Asociado señor Kolthoff Caraballo.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo de Titulares del Condominio Victoria Plaza, etc.

        Peticionario

           v.                CC-2010-617

Raúl Gómez Estremera y su esposa María Cruz Romance, et al.
        Recurridos

Opinión Disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES a la cual se une el Juez Asociado señor KOLTHOFF CARABALLO

En San Juan, Puerto Rico, a 24 de enero de 2012.

Entiendo que la Ley de Condominios de 2003, Ley Núm. 103-2003, 31 L.P.R.A. sec. 1291-1294e, priva de jurisdicción sobre la materia al Tribunal de Primera Instancia para atender, aunque sea por vía de una reconvención, una reclamación contra los órganos ejecutivos de un condominio por incumplimiento con los deberes impuestos en esa ley. Por eso, disiento respetuosamente. Los titulares que deseen presentar ese tipo de acción, deberán hacerlo ante el Departamento de Asuntos del Consumidor (D.A.Co.), conforme dispone el Art. 42 de la Ley de Condominios, 31 L.P.R.A. sec. 1293f, y el Reglamento

sobre Condominios Núm. 6728 del D.A.Co. Reglamento sobre Condominios, Núm. 6728, Departamento de Asuntos del Consumidor, 2 de diciembre de 2003. Al analizar esta controversia a la luz de la doctrina de jurisdicción primaria, la Opinión del Tribunal no toma en cuenta la jurisdicción estatutaria exclusiva que el legislador le encomendó al Tribunal de Primera Instancia y al D.A.Co. en la Ley de Condominios.

I

El inicio de la controversia que tenemos ante nos surgió luego de que ocurriera un desbordamiento de agua que ocasionó daños al elevador comunal del Condominio Victoria Plaza. Producto de ese incidente, el elevador de servicios del condominio sufrió daños. Este es un condominio exclusivamente residencial, sometido al régimen de propiedad horizontal desde 1964. El desbordamiento emanó del apartamento 2-B que es propiedad de los esposos Sr. Raúl Gómez Estremera y la Sra. María Cruz Romance. Tras la celebración de una asamblea extraordinaria, se autorizó a la Junta de Directores a costear, con fondos comunales, la reparación del elevador. Para su reparación se invirtieron $10,765.

Por esos hechos, el matrimonio Gómez-Cruz presentó una reclamación extrajudicial al Consejo de Titulares. En esta, reclamaron los daños que sufrió su apartamento como consecuencia del incidente. Esa reclamación fue referida a la compañía aseguradora Universal Insurance Company que, luego de evaluar el incidente, notificó al matrimonio que el Consejo de

Titulares no era responsable por lo ocurrido. Arguyó que no existía relación causal entre las reparaciones realizadas a la cisterna del condominio y los daños acaecidos en el apartamento. Posterior a esa reclamación, surge del expediente que el matrimonio Gómez-Cruz **no volvió a hacer reclamación alguna, ni presentó una querella ante el D.A.Co.**

Mientras tanto, el Consejo de Titulares requirió en varias ocasiones al matrimonio Gómez-Cruz que le reembolsara la cantidad invertida en la reparación del elevador. Tras no tener éxito, el Consejo de Titulares presentó una demanda en cobro de dinero en el Tribunal de Primera Instancia.

Inconforme con ese proceder, el matrimonio Gómez-Cruz presentó una reconvención. Alegó que el 20 de diciembre de 2007, personal contratado por el condominio vació, limpió y volvió a llenar la cisterna del condominio. Añadieron que en la madrugada del día siguiente al que se llevaron a cabo las reparaciones, se escucharon ruidos, vibraciones y un "escopeteo de aire" en la tubería del condominio que ocasionaron que, por intervalos, saliera agua con presión. Explicaron que, al día siguiente, una tuerca recientemente sustituida de las mangas de la caja de agua del inodoro de su baño se rompió e inundó todo el apartamento. Esa inundación desembocó en el elevador del condominio y ocasionó los daños.

Asimismo, en sus alegaciones el matrimonio Gómez-Cruz adujo que personal de seguridad del condominio trató de cerrar la llave de paso de agua de su apartamento pero se les hizo

imposible por lo deteriorada que se encontraba. También, afirmaron que esa llave de paso es propiedad del condominio y está bajo su control exclusivo y mantenimiento. Añadieron que no era la primera vez que ocurrían eventos de esa naturaleza, ya que previamente otros apartamentos experimentaron desbordamientos de agua por la alta presión que genera la bomba de agua del condominio.

Inconforme, el Consejo de Titulares presentó una solicitud de desestimación de la reconvención. En síntesis, argumentó que el Tribunal de Primera Instancia carecía de jurisdicción sobre la materia para atender la reclamación presentada por los esposos Gómez-Cruz. El Consejo de Titulares sostuvo su postura a base de la letra del Art. 42 de la Ley de Condominios, supra, que le confiere jurisdicción al D.A.Co. para atender todas las reclamaciones que se presenten contra el Consejo de Titulares o la Junta de Directores con relación a la administración de un inmueble cuyos apartamentos estén dedicados a vivienda.

Sin hacerse esperar, los esposos Gómez-Cruz se opusieron a la desestimación de la reconvención. Razonaron que el Tribunal de Primera Instancia adquirió jurisdicción para dirimir la reconvención desde el momento en que el Consejo de Titulares presentó la demanda en su contra. El Tribunal de Primera Instancia declaró no ha lugar la solicitud de desestimación.

Insatisfecho con ese proceder, el Consejo de Titulares presentó un recurso de certiorari ante el Tribunal de Apelaciones. El 14 de junio de 2010 ese foro denegó expedir el auto de certiorari y remitió el caso a la sala de origen para la continuación de los procedimientos. En esencia, el foro apelativo intermedio concluyó que

> [d]e las alegaciones de la reconvención presentada por los demandados-recurridos se desprende que la causa de acción que motivó la reconvención surgió como consecuencia de la situación ocurrida en el Condominio … el 21 de mayo de 2008, consistente en un desbordamiento de agua proveniente del Apartamento 2-B propiedad de los demandados. Este mismo acto fue el que motivó la demanda original en el pleito presentada por el peticionario. La naturaleza de ambas reclamaciones evidencia que las mismas surgen de unos mismos hechos, por lo que la parte demandada-recurrida estaba en la obligación de presentar la reconvención, ya que, de lo contrario, se entendería renunciada con los mismos efectos de cosa juzgada....

> Apéndice del recurso, pág. 10.

Nuevamente inconforme, el 16 de julio de 2010 el Consejo de Titulares presentó ante nos un recurso de certiorari. Adujo que al foro apelativo intermedio erró al resolver que el Tribunal de Primera Instancia, por vía de una reconvención compulsoria, puede atender asuntos sobre los cuales no tiene jurisdicción sobre la materia. De igual forma, sostuvo que también erró el foro apelativo intermedio al no considerar si el D.A.Co. es el foro con jurisdicción exclusiva para atender los asuntos planteados en la reconvención.

Con el beneficio de la comparecencia de ambas partes, expedimos el auto. Luego de estudiar y analizar la

controversia, este Tribunal concluye que la aplicabilidad de la jurisdicción del D.A.Co. bajo el Art. 42 de la Ley de Condominios, supra, no es un asunto de jurisdicción sobre la materia, sino más bien de jurisdicción primaria. Arguye que si se sostiene la jurisdicción primaria exclusiva que ostenta el D.A.Co., estaríamos incidiendo sobre el principio de economía judicial que rige en todo nuestro ordenamiento procesal. Por eso, concluye que cuando se impugnan los acuerdos del Consejo de Titulares en un condominio residencial por vía de una reconvención por los mismos hechos de la causa de acción original del consejo demandante, el Tribunal de Primera Instancia retendrá la jurisdicción.

Al concluir así, considero humildemente que la Opinión mayoritaria ignora la voluntad del legislador y otorga al Tribunal de Primera Instancia jurisdicción por vía del mecanismo de la reconvención para atender asuntos que fueron retirados de su alcance, por mandato legislativo.

II

A

En primer lugar, procede preguntarse en qué consisten los reclamos presentados por el matrimonio Gómez-Cruz a través de la reconvención. Sujeto a lo anterior, analizaré si versan sobre materias que están ante la autoridad y competencia del foro de primera instancia o por el contrario, del D.A.Co.

De una evaluación de las alegaciones de la reconvención surge que el matrimonio Gómez-Cruz le imputa al Consejo de

Titulares, a través de su Junta de Directores y administración, no tomar medidas para corregir los altos niveles de presión de agua que provocaron daños en los apartamentos. De igual forma, le imputa al Consejo de Titulares no adquirir cubiertas de seguro adecuadas para proteger los apartamentos contra riesgos de inundación.[20] Es decir, como correctamente señaló el Consejo de Titulares en su petición de *certiorari* ante este Tribunal, las alegaciones del matrimonio Gómez-Cruz se traducen en reclamos por violaciones a los deberes y facultades delegados a los cuerpos directivos en la Ley de Condominios, <u>supra</u>. En otras palabras, el matrimonio Gómez-Cruz aduce implícitamente que el Consejo de Titulares ha faltado a algunos de los deberes que le impone el Art. 38 de la Ley de Condominios, 31 L.P.R.A. sec. 1293b.

---

[20] Sus alegaciones específicas son las siguientes:

"1. El Condominio Victoria Plaza, donde residen los codemandados aquí reconvencionistas[,] durante los pasados años hasta el presente han [sic] sufrido de problemas en los niveles de presión en el sistema de bombeo de agua, provocando en diferentes ocasiones la rotura de tubos y componentes del sistema pluvial en diferentes apartamentos del referido Condominio.
2. El Consejo de Titulares, a través de su Junta de Directores y Administración ha tomado conocimiento de estos eventos y de las razones de los mismos. No obstante, no se han tomado las medidas correctivas adecuadas para corregir los altos niveles de presión, permitiendo de esa manera que se provoquen daños en las propiedades de sus condómines y particular, de los codemandados aquí comparecientes. A pesar del conocimiento del Consejo de Titulares, su Junta de Directores, sus miembros y la Administración no se han obtenido las cubiertas de seguro adecuadas para los posibles daños que se pudieran ocasionar a los equipos y maquinarias del Condominio. 4. Los codemandados reconvenientes han sufrido daños en su propiedad, así como daños físicos del co-demandado, Gómez Estremera, como resultado de los acontecimientos ocurridos el 21 de mayo de 2008 en su propiedad. No empece a ello, de una forma caprichosa y arbitraria la parte demandante optó de una manera selectiva de presentar la demanda de epígrafe contra estos".

Asimismo, las alegaciones en contra de la Junta de Directores van dirigidas a imputarle a ese órgano ejecutivo el incumplimiento de los deberes que la ley le impuso en el Art. 38-D, 21 L.P.R.A. sec. 1293b-4. Concretamente, el matrimonio Gómez-Cruz insinúa que la Junta de Directores, falló en "atender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares". Art. 38-D(a), íd.

Aclarado que los reclamos al Consejo de Titulares y a la Junta de Directores son por violaciones a los deberes que le impone la ley a esos cuerpos administrativos en los Arts. 38 y 38-D, respectivamente, hay que analizar entonces a qué foro le corresponde atender esas reclamaciones.

B

El Art. 42 de la Ley de Condominios, _supra_, regula las formas en que se canalizarán las querellas que se susciten en los condominios sometidos al régimen de propiedad horizontal. Específicamente, determina el procedimiento para la impugnación de los acuerdos del Consejo de Titulares y de las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores.

De entrada, el Art. 42, _supra_, especifica en su primer párrafo los foros en los que se deberán dilucidar las

controversias en los condominios dependiendo de quién impugne y de la naturaleza residencial o comercial del condominio. A esos efectos el primer párrafo del artículo explica que

> [l]os acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores, del titular que somete el inmueble al régimen que establece esta Ley, durante el período de administración que contempla el Artículo 36-A, del Presidente y del Secretario, concernientes a la administración de inmuebles que no comprendan apartamientos destinados a vivienda o de titulares de apartamientos no residenciales en los condominios en donde exista por lo menos un apartamiento dedicado a vivienda, serán impugnables ante el Tribunal de [P]rimera [I]nstancia por cualquier titular que estimase que el acuerdo, determinación, omisión o actuación en cuestión es gravemente perjudicial para él o para la comunidad de titulares o es contrario a la ley, a la escritura de constitución o al Reglamento a que hace referencia el Artículo 36. **Las impugnaciones por los titulares de apartamientos destinados a viviendas se presentarán ante el Departamento de Asuntos del Consumidor.** [Énfasis suplido.]

El profesor Michel Godreau Robles explica que "[b]ajo la nueva Ley, la jurisdicción del DACO se reserva exclusivamente para los titulares de apartamientos dedicados a vivienda; los titulares de comercio o de oficinas profesionales tendrán que presentar sus querellas en el Tribunal de Primera Instancia, aun cuando se trate de un condominio mixto...". M. J. Godreau Robles, La nueva Ley de Condominios, 2da ed., Editorial Dictum, San Juan, Puerto Rico, 2003, pág. 41.

Por su parte, el Reglamento sobre Condominios, supra, reafirma la jurisdicción que posee el D.A.Co. para atender querellas. A esos efectos, el reglamento señala en su sección 26 que

[c]ualquier titular o grupo de titulares de condominios donde exista por lo menos una unidad de vivienda, podrá impugnar ante este Departamento cualquier acuerdo, determinación, omisión o actuación del Consejo de Titulares, del Director o de la Junta de Directores, presidente o del secretario de la Junta de Directores o de la persona que someta el inmueble al Régimen de Propiedad Horizontal, mientras éste sea a su vez, el administrador interino del condominio y del Síndico; siempre y cuando el acuerdo, determinación, omisión o actuación en cuestión sea gravemente perjudicial para el titular o grupo de titulares que impugna o para la comunidad de titulares o cuando dicho acuerdo, determinación, omisión o actuación sea contraria a la Ley, a la escritura de constitución al Régimen de Propiedad Horizontal, al Reglamento del Condominio y a este Reglamento.

El Departamento no tendrá jurisdicción para entender en controversias que surjan contra el agente administrador. Las mismas corresponderán atenderlas al Director o la Junta de Directores y al Consejo de Titulares.

El Departamento no tendrá jurisdicción para adjudicar querellas que surjan en condominios de uso exclusivamente comercial o profesional. Igualmente carecerá de jurisdicción en aquellos condominios donde exista por lo menos una unidad de vivienda, y la querella sea interpuesta por un titular o grupo de titulares de apartamentos no residenciales. En estos casos la jurisdicción corresponderá al Tribunal de Primera Instancia. El Departamento sólo atenderá reclamaciones del titular o grupo de titulares que sean propietarios de las unidades residenciales.

También quedará excluido de la jurisdicción del Departamento, toda reclamación que consista en cuestionar alguna cláusula contenida en la escritura matriz o el reglamento del condominio inscrito en el Registro de la Propiedad. Igualmente quedan excluidos las querellas entre titulares o cuando el Consejo de Titulares o el Director o la Junta de Directores entable reclamación contra uno o varios titulares o residentes del condominio. La jurisdicción para ventilar estas acciones corresponderá al Tribunal de Primera Instancia.

Una lectura del Art. 42, supra, así como de la sección 26 del Reglamento sobre Condominios revela la jurisdicción que ostenta el Tribunal de Primera Instancia y la que el legislador asignó al D.A.Co. para entender en las controversias que surjan en los condominios sometidos al régimen de propiedad horizontal.

El Tribunal de Primera Instancia está facultado para conocer: (1) en reclamaciones que surjan en condominios de uso exclusivamente comercial o profesional; (2) en aquellos condominios donde exista por lo menos una unidad de vivienda, y la querella sea interpuesta por un titular o grupo de titulares de apartamentos **no residenciales**; (3) en reclamaciones que cuestionen alguna cláusula contenida en la escritura matriz o el reglamento del condominio inscrito en el Registro de la Propiedad; (4) en querellas entre titulares y; (5) en reclamaciones del Consejo de Titulares, el Director o la Junta de Directores contra uno o varios titulares o residentes del condominio.

El D.A.Co., en cambio, está autorizado a atender: (1) cuando cualquier titular o grupo de titulares donde exista por lo menos una unidad de vivienda, impugne cualquier acuerdo, determinación, omisión o actuación del Consejo de Titulares, del Director o de la Junta de Directores, del Síndico, del Presidente o del Secretario de la Junta de Directores, o de la persona que someta el inmueble al Régimen de Propiedad Horizontal mientras esta persona sea a su vez, la

administradora interina del condominio y; (2) las reclamaciones, en condominios mixtos, iniciadas por los titulares o grupo de titulares que sean propietarios de las unidades residenciales.

En <u>Consejo Cond. Plaza del Mar v. Jetter</u>, 169 D.P.R. 643, 662 (2006), añadimos que la jurisdicción exclusiva del D.A.Co.

> *no* se extiende a toda posible causa de acción dimanante de un condominio sometido al régimen de la propiedad horizontal. D.A.Co. tiene jurisdicción para dirimir las controversias suscitadas por acciones u omisiones de la junta de un condominio y sobre los actos que no sean de índole voluntaria o que trasciendan los intereses personales y privados de los titulares o de los condominios. [Énfasis en el original.]

Véase, además, <u>Srio. D.a.C.O. v. J. Condóminios C. Martí</u>, 121 D.P.R. 807 (1988). Añadimos, al citar con aprobación la comparecencia como *amicus curiae* del D.A.Co., que

> **(s)i el titular** o grupo de titulares de un condominio **ejercita la acción de impugnación que le autorizan los Artículo 42** y 48 de la Ley, **y a la vez solicita indemnización que pudiera corresponderle bajo el Código Civil por daños ocasionados por la conducta negligente de los cuerpos ejecutivos del Condominio, este Departamento podría adjudicar ambas reclamaciones** al estar autorizados para ello, por virtud de los [sic] dispuesto en el Artículo 51 (de la concernida ley). [Énfasis suplido.]
>
> <u>Consejo Cond. Plaza del Mar v. Jetter</u>, <u>supra</u>, pág. 662.

Como notamos, la jurisdicción del D.A.Co. y del Tribunal de Primera Instancia para entender en controversias fue claramente delimitada por el legislador. Por esa razón, la opinión mayoritaria falla en su análisis al enmarcar la controversia que nos ocupa al amparo de la doctrina de

jurisdicción primaria. La jurisdicción primaria presupone la existencia de jurisdicción concurrente entre el proceso administrativo y el sistema judicial. Ferrer Rodríguez v. Figueroa, 109 D.P.R. 398, 402 (1980). Esa no es la situación del caso ante nuestra consideración. En esos términos nos expresamos en First Fed. Savs. v. Asoc. de Condómines, 114 D.P.R. 426 (1983), al analizar cuál era el foro con poder y autoridad para dilucidar una acción de impugnación por parte de un titular de un apartamento comercial contra el Consejo de Titulares por la imposición de cuotas de mantenimiento. Se explicó que esa interrogante no podía contestarse "a base de la aplicación automática de la doctrina de jurisdicción primaria". Íd., pág. 432. Al utilizar como fundamento lo expresado en Ferrer Rodríguez v. Figueroa, supra, pág. 402, señalamos que

> "[l]a verdadera jurisdicción primaria ocurre tan solo cuando existe jurisdicción concurrente entre el proceso administrativo y el sistema judicial"... De esta manera, la "... doctrina opera para determinar qué organismo, si el judicial o el administrativo, debe hacer la determinación inicial del asunto y se aplica específicamente cuando la situación presenta cuestiones de hecho que requieren el ejercicio de la discreción administrativa...".
>
> First Fed. Savs. v. Asoc. de Condómines, supra, pág. 434.

Luego de analizar las disposiciones de la Ley de Propiedad Horizontal de 1958 y las enmiendas introducidas a ese cuerpo legal por la Ley Núm. 157 de 4 de junio de 1976, este Tribunal interpretó el artículo equivalente en aquel entonces al Art. 42 de la ley actual y concluyó que

> [e]l lenguaje terminante y mandatorio transcrito es
> claro. Establece dos foros *distintos* para instarse
> acciones impugnatorias. El criterio para determinar
> el apropiado se remite al carácter exclusivo
> comercial o mixto (residencial y comercial) del
> condominio. Cuando en un inmueble se destina un
> apartamiento para vivienda, el foro indicado para
> decantar su pericia –"se radicarán", expresa la ley–
> es primeramente DACO. **Esa jurisdicción es exclusiva**.
> [Énfasis suplido y en el original.]

First Fed. Savs. v. Asoc. de Condómines, supra, pág.
434.

Con relación a la jurisdicción exclusiva por mandato de

un estatuto (jurisdicción exclusiva estatutaria), el profesor

Demetrio Fernández explica que

> [e]n el examen y aplicación de la doctrina de
> jurisdicción primaria es necesario tener presente
> que, si el estatuto le confiere jurisdicción al
> organismo administrativo, **se trata de una**
> **jurisdicción estatutaria**. Rovira v. Puerto Rico
> Telephone Company, [96 D.P.R. 77 (1968)] explicó con
> suficiente claridad que, si la ley orgánica de la
> agencia administrativa le confiere expresamente la
> jurisdicción al ente administrativo, se trata de una
> jurisdicción exclusiva por vía de estatuto y no es
> necesario considerar la aplicación de la doctrina de
> jurisdicción primaria. Precisa recordar en esta
> coyuntura que la doctrina de la jurisdicción
> primaria presupone una jurisdicción concurrente
> entre la agencia y el tribunal. Tal y como hemos
> apuntado, la diferencia que resalta es que el
> legislador le confió esa facultad específicamente a
> la agencia.

D. Fernández Quiñones, Derecho Administrativo y la
Ley de Procedimiento Administrativo Uniforme, 2da
ed., Colombia, Ed. Forum, 2001, pág. 437.

III

La Regla 11.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V,

permite que una parte presente una reclamación contra otra

parte adversa a través del mecanismo de la reconvención.

S.L.G. Font Bardón v. Mini-Warehouse, 179 D.P.R. 322, 332 (2010). En particular, el ordenamiento jurídico permite dos tipos de reconvenciones: las obligatorias y las permisibles. Íd.

El efecto de no presentar una reconvención obligatoria es "imp[edir] que el demandado presente una acción independiente basada en la misma transacción o evento que motivó la acción original, ya que es aplicable, por analogía, el principio de cosa juzgada, al efecto de que una sentencia es concluyente en cuanto a aquellas cuestiones **que pudieron** haber sido planteadas y no lo fueron. J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da. Ed., San Juan, Publicaciones J.T.S., 2011, Tomo II, pág. 558. (Énfasis nuestro.) Véase, además, Sastre v. Cabrera, 75 D.P.R. 1, 3 (1953). Como se aprecia, para que opere el principio de cosa juzgada en cuanto a la reconvención obligatoria, es necesario que esta se pudiera presentar en el pleito.

Por otro lado, "[l]as reconvenciones permisibles son aquellas reclamaciones que no surgen del mismo acto, omisión o evento que motivó la reclamación de la parte contra la que se presenta". S.L.G. Font Bardón v. Mini-Warehouse, supra, pág. 332. Véase, además, Regla 11.2 de Procedimiento Civil, 32 L.P.R.A. Ap. V. De esta forma, es opcional presentar una reconvención permisible y si no se presenta, "no tiene efectos de res judicata". J.A. Cuevas Segarra, op cit., pág. 566.

Esto implica que "puede interponerse una acción independiente" posteriormente. Íd.

De esta discusión doctrinal resalta que la presentación de una reconvención presupone que el foro ante el cual se presenta cuenta con jurisdicción para atenderla. Después de todo, uno de los pilares básicos de nuestro ordenamiento jurídico es que nuestros tribunales son de jurisdicción general. Junta Dir. Cond. Montebello v. Fernández, 136 D.P.R. 223, 230 (1994). Por ende, pueden ver todo tipo de controversias, excepto que lo contrario "se haya dispuesto expresamente en algún estatuto o que ello surja del mismo por implicación necesaria". Íd.

En este caso, la reconvención que presentó el matrimonio Gómez-Cruz es, en esencia, por fallas del Consejo de Titulares, que a través de su Junta de Directores, alegadamente no tomó las medidas adecuadas para el mantenimiento y corrección del sistema de bombeo de agua del Condominio. Igualmente, los recurridos cuestionan la funcionalidad de las pólizas de seguro que el condominio tiene para asegurar los daños que el desbordamiento de agua pueda ocasionarle a las maquinarias y equipos del inmueble.

Al ser esos los reclamos, forzosamente tenemos que concluir que la reconvención se trata de impugnaciones por supuestas omisiones y acciones que el Consejo de Titulares y la Junta de Directores ha hecho en contra de la ley. Esas acciones y omisiones están enmarcadas dentro de la gestión

administrativa que le corresponde a los cuerpos rectores del condominio. El legislador delegó la dilucidación de la impugnación de esas omisiones y acciones al D.A.Co de **manera expresa y exclusiva**. Recordemos que el Art. 42, <u>supra</u>, dispone en su primer párrafo que **los titulares de apartamentos destinados a vivienda podrán impugnar en el D.A.Co.** cualquier acuerdo, determinación, **omisión o actuación** que le sea gravemente perjudicial o **contrario a la ley**, a la escritura de constitución o al reglamento.

Como señalamos en <u>Consejo Cond. Plaza del Mar v. Jetter</u>, <u>supra</u>, págs. 669-670: "Tanto la Ley de la Propiedad Horizontal de 1976 como su versión enmendada en 2003, son claras al disponer que DACo posee jurisdicción exclusiva sobre las reclamaciones que presenten los titulares para impugnar las determinaciones, actuaciones u omisiones de la Junta de Directores".

Según surge del alegato del matrimonio Gómez Cruz ante este Tribunal, luego de estos recibir la notificación de la aseguradora denegándoles compensación por los daños ocasionados a su apartamento, nunca acudieron al D.A.Co. a reclamar lo que hoy pretenden reclamarle al Consejo de Titulares a través de la reconvención. Si los esposos recurridos tenían reparos sobre la forma en que el Consejo de Titulares y la Junta de Directores llevaban a cabo sus funciones y deberes con relación al mantenimiento del condominio, debieron recurrir al D.A.Co. oportunamente.

El Art. 42 de la Ley de Condominios, supra, contempla las acciones en daños y perjuicios que presenten los titulares contra los órganos ejecutivos de los condominios. En cada caso hay que analizar si la actuación u omisión que causa el daño alegado, proviene de un deber que le impone la Ley de Condominios al Consejo o a la Junta. La Ley de Condominios, al imponerle unas funciones y deberes tanto al Consejo como a la Junta, previó las posibles acciones en daños y perjuicios que surgirían por incumplir con su letra y delegó en el D.A.Co. la potestad de dilucidarlas en primera instancia. Una parte no puede traer ante el Tribunal de Primera Instancia, por vía de una reconvención, un asunto que ha sido expresamente retirado de su jurisdicción a través de una ley.

En el caso ante nos, el matrimonio Gómez-Cruz pretende otorgarle jurisdicción al Tribunal de Primera Instancia a través de la reconvención. Tal proceder es errado. Las reclamaciones presentadas por el matrimonio a través de la reconvención, son de las que se originan en el día a día del curso administrativo de un condominio y las que el legislador quiso canalizar para que sea el D.A.Co., como foro especializado, quien las dilucide. Así pues, lo que procedía era que el matrimonio Gómez-Cruz presentara oportunamente ante el D.A.Co. su reclamación contra el Consejo de Titulares y su Junta de Directores, por incumplimiento de lo dispuesto en los Arts. 38 y 38-D de la Ley de Condominios, supra, Véase, Art. 42(c) de la Ley de Condominios, supra.

La Opinión del Tribunal considera que esta alternativa es onerosa para los condóminos porque supuestamente reduce a treinta días el término para reclamar indemnización por los daños sufridos, que de otro modo sería de un año, según el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298. Esa conclusión es equivocada. Confunde las diferentes causas de acción que el legislador incluyó en el Art. 42 de la Ley de Condominios de 2003, supra.

El plazo de treinta días para reclamar en D.A.Co que recoge la Opinión mayoritaria se refiere únicamente a las acciones para impugnar acuerdos o determinaciones de la Junta de Directores [Art. 42(a)] o del Consejo de Titulares [Art. 42(b)]. Esa no es la acción que instaron los condóminos recurridos.

Por el contrario, la causa de acción de los recurridos queda enmarcada en el Art. 42(c), íd., pues se dirige a impugnar las omisiones de la Junta, en violación de sus deberes según la Ley de Condominios. **Para ello el propio Art. 42(c) le da no uno sino dos años a los titulares para instar la acción correspondiente**. Así lo resolvimos hace seis meses en Pereira Suárez v. Jta. Dir Cond., Op. de 30 de junio de 2011, 2011 T.S.P.R. 102, 2011 J.T.S. 107, 182 D.P.R. ___ (2011). Ese plazo se cuenta desde que el reclamante conoció de la omisión. Art. 42(c), supra.[21]

---

[21] No dilucidaré si la causa de acción del matrimonio Gómez-Cruz está prescrita pues ese es un asunto que no fue planteado por ninguna de las partes.

En fin, el legislador le concedió a los condóminos individuales un foro administrativo más conveniente y menos oneroso para dilucidar con exclusividad sus reclamos. En el caso específico de las reclamaciones al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, por los daños causados supuestamente por las omisiones de la Junta de Directores o del Consejo de Titulares que violen la ley, la escritura matriz o el reglamento del condominio, el legislador le concedió a cada condómino un plazo de prescripción más generoso para instar su causa de acción en el foro administrativo que el legislador designó con exclusividad. Sin embargo, la Opinión mayoritaria descarta lo dispuesto en el Art. 42(c), supra, y lo resuelto en Pereira Suárez v. Jta. Dir Cond., supra, y en Consejo Cond. Plaza del Mar v. Jetter, supra, para en su lugar avalar una mal llamada reconvención compulsoria en el tribunal. No hay regla de hermenéutica que justifique esa revocación *sub silentio* de la ley y nuestros precedentes.

Lo que hace el Tribunal es crear una dualidad de acciones. Reconoce por un lado las reclamaciones por daños que pueden instar los titulares contra la Junta de Directores o el Consejo de Titulares, al amparo del Art. 42 de la Ley de Condominios, supra, en cualquiera de sus modalidades. Por otro lado invoca el estatuto general de danos, el Art. 1802, supra, para crear una causa de acción por daños en los tribunales, adicional a la que regula el estatuto especial. No está claro

cuándo aplicará un estatuto y cuándo aplicará el otro. Por el contrario, la demarcación entre ambas causas de acción es demasiado difusa. Así, aunque en este caso se imputa a la Junta de Directores una omisión al deber que le impone la Ley de Condominios y se solicita la indemnización correspondiente por los daños alegadamente causados, se descarta la aplicación del Art. 42(c), supra, y se permite una reclamación en el tribunal en lugar del D.A.Co. contra una Junta de Directores en funciones, por sus determinaciones, actuaciones u omisiones. ¿No es eso lo que rechazamos en Consejo Cond. Plaza del Mar v. Jetter, supra? ¿Basta invocar el Art. 1802 para zafarse de la jurisdicción del D.A.Co. establecida en el Art. 42(c), supra?

Lo que esta decisión augura es que habrán controversias interminables acerca de cuál es el foro con jurisdicción o si la causa de acción está prescrita. Como cuestión práctica, hemos anulado la jurisdicción exclusiva que el legislador le dio al D.A.Co. durante el transcurso del primer año del período prescriptivo del Art. 42(c), supra. Es anticipable que esa jurisdicción exclusiva solo se invocará durante el año siguiente y enfrentará la inmediata moción de desestimación bajo la alegación de que lo que procedía era demandar al amparo del Art. 1802, supra, y que al transcurrir el año la causa de acción prescribió. Felicito de antemano a quien pueda discernir quién tiene la razón. De todos modos, el costo de la

litigación lo asumirán los Consejos de Titulares, a pesar de que el legislador quiso evitarles esa penuria económica.

IV

Sabido es que "[l]a jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias". S.L.G. Solá-Moreno v. Bengoa Becerra, Op. de 11 de agosto de 2011, 2011 T.S.P.R. 119, 2011 J.T.S. 124, 182 D.P.R. __, (2011) citando a Asoc. Punta las Marías v. A.R.Pe., 170 D.P.R. 253, 263 n. 3 (2007); Gearheart v. Haskell, 87 D.P.R. 57, 61 (1963). La jurisdicción sobre la materia, por su parte, "se refiere a la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal". S.L.G. Solá-Moreno v. Bengoa Becerra, íd., citando a J. Echevarría Vargas, Procedimiento civil puertorriqueño, Colombia, 2010, pág. 25. Por ello, "la falta de jurisdicción sobre la materia significa que el tribunal carece de autoridad y poder para entender en el asunto". Unisys v. Ramallo Brothers, 128 D.P.R. 842, 862 n. 5 (1991). Ahora bien, "[s]ólo el Estado, a través de sus leyes, puede [privar de jurisdicción sobre la materia a un tribunal]". Íd.

La Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, enumera entre las defensas para solicitar la desestimación de un pleito, la falta de jurisdicción sobre la materia. González v. Mayagüez Resort & Casino, 176 D.P.R. 848, 854 (2009). Esta es una defensa privilegiada que puede levantarse en cualquier momento durante el proceso. Íd., pág.

855, citando a R. Hernández Colón, <u>Práctica jurídica de Puerto Rico: Derecho procesal civil</u>, 4ta ed., San Juan, Ed. Lexis Nexis, 2007, Sec. 2601, pág. 234.

Por su parte,

> [l]a Regla 10.8(c) de Procedimiento Civil, 32 <u>L.P.R.A. Ap. III R. 10.8(c)</u>, dispone que "[s]iempre que surja, por indicación de las partes o de algún otro modo, que el tribunal carece de jurisdicción sobre la materia, éste desestimará el pleito". Bajo esta disposición, se puede desestimar una reclamación **por ser de jurisdicción de una agencia administrativa** o de la esfera federal. Esto significa que es al amparo de la Regla 10.8(c) que se ordena a los tribunales locales desestimar una acción civil cuando surge la falta de jurisdicción sobre la materia ante el foro aludido. [Énfasis nuestro; citas omitidas.]

> <u>González v. Mayagüez Resort & Casino</u>, <u>supra</u>, pág. 855.

En el caso que nos ocupa, el legislador quiso otorgarle en primera instancia **jurisdicción exclusiva** al D.A.Co. para ventilar los reclamos que hicieran los condóminos dueños de apartamentos residenciales en contra de la Junta de Directores. Debido a lo anterior, en este caso no cabe hablar de reconvención compulsoria pues el matrimonio Gómez Cruz no podía presentarla, ya que el foro primario no contaba con jurisdicción para atenderla. Así pues, lo único que le resta a la pareja es defenderse en el juicio y probar que los daños al elevador no son producto de su negligencia.

V

Por los fundamentos antes expuestos, revocaría la resolución del Tribunal de Apelaciones y desestimaría la reconvención presentada por el matrimonio Gómez-Cruz por falta

de jurisdicción sobre la materia. No puedo avalar que se soslaye la voluntad del legislador con el pretexto de la economía procesal. Comprendo la preocupación de la mayoría al respecto, pero me parece evidente que el matrimonio Gómez-Cruz debió ser más proactivo en su reclamo. Es decir, una vez los recurridos obtuvieron la denegatoria de cubierta por parte de la aseguradora del condominio, debieron acudir al D.A.Co. El texto de la ley es claro. El titular que desee impugnar acciones u omisiones de los órganos directivos que sean contrarias a la ley, debe reclamar oportunamente ante el D.A.Co. Es evidente que los recurridos no tenían la intención de reclamarle al condominio hasta que el Consejo de Titulares les demandó. Eso no hace compulsoria la reconvención, pues el primer requisito para ello es que el foro judicial cuente con jurisdicción para atender la reclamación. Aquí no hay jurisdicción por mandato de la Asamblea Legislativa. Por esta razón, disiento respetuosamente.


                              RAFAEL L. MARTÍNEZ TORRES
                                   Juez Asociado